Mary Louise SODERLUND, Plaintiff-Respondent-
Cross Appellant,

v.

Brian D. ALTON, and Northwestern National Casu-
alty Company, Defendants-Appellants-Cross
Respondents,†

MINNESOTA LAWYERS MUTUAL INSURANCE
COMPANY, and Alias Insurance Company,
Defendants.

Court of Appeals

*No. 90–0772. Oral argument January 22, 1991.—Decided
February 12, 1991.*

(Also reported in 467 N.W.2d 144.)

†Petition to review dismissed.

On behalf of the defendants-appellants-cross-respondents, the cause was submitted on the briefs of *Thomas J. Misfeldt* and *Beverly Wickstrom* and oral argument of *Thomas J. Misfeldt* of *Misfeldt, Stark, Richie & Wickstrom* of Eau Claire.

On behalf of the respondent-cross-appellant, the cause was submitted on the brief and oral argument of *Phillip M. Steans* of *Steans, Skinner, Schofield & Higley* of Menomonie.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Attorney Brian Alton, who formerly represented Mary Soderlund, appeals a judgment against him in a legal malpractice action. He contends that (1) Mary failed to prove a causal connection between his

negligence and any damage to her; (2) the trial court erred by not requiring Mary to prove that she would have prevailed in the underlying custody dispute absent his negligence; (3) the trial court erred by excluding any evidence of Mary's alleged history of attempted suicide, substance abuse and child abduction subsequent to being awarded custody in Wisconsin; and (4) the jury's award for future child support was not supported by the evidence. On cross-appeal, Mary contends that the trial court erred by refusing to allow a verdict question on the value of legal services rendered gratuitously by her grandfather.

We conclude that the evidence supports the jury finding of causal negligence by Alton, but that a retrial is required on the issue of damages resulting from that negligence. We further conclude that the trial court did not err by refusing to submit a jury question regarding the value of undocumented legal services performed gratuitously by Mary's grandfather. Accordingly, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

Mary employed Alton to obtain a divorce from her husband, James. Mary also sought custody of the couple's two children. James and Mary had been married in 1983 in Wisconsin and moved to Florida. A brief time later, Mary returned with the children to Wisconsin. She went back to Florida in December 1983 to attempt a reconciliation, but returned again to Wisconsin on September 7, 1984. A few days later, on September 17, Alton filed Mary's Wisconsin divorce action and served the pleadings on James in Florida on October 3.

On October 29, James filed a divorce action in Florida and served the divorce pleadings on Mary in Wisconsin on November 14. On November 29, the Wisconsin court overruled James' objection to its jurisdiction. On

December 19, at an uncontested hearing in Wisconsin, the court granted Mary temporary custody of the children and ordered James to pay temporary child support of $744 per month. The next day, the Florida court entered a default order when Mary did not appear in the Florida action. The Florida court, Judge J. Cail Lee presiding, scheduled a final hearing in the matter for January 9, 1985. Two days before the final hearing in Florida, Alton telephoned Judge Lee and informed him of the Wisconsin divorce action. Judge Lee proceeded, however, with the hearing on January 9, ruling that Alton's call was "untimely in the extreme, and therefore . . . without merit."

On January 17, a final order was entered in the Florida proceeding, granting the divorce and reserving the issues of custody and maintenance. On February 11, 1985, a final Wisconsin judgment was entered granting a divorce and awarding custody of the children to Mary, and ordering James to pay $744 per month in support. Mary challenged the Florida proceedings on appeal to the Florida Court of Appeals, where Judge Lee's exercise of jurisdiction in the matter was affirmed. James never appealed the Wisconsin judgment. In subsequent Florida proceedings in 1987, the court awarded James custody of both children. Each parent has at some point in these proceedings been adjudged in contempt of either the Florida or Wisconsin court for interfering with the conflicting child custody awards.

The children continue to reside with Mary in Wisconsin. She is unable to collect child support based on her Wisconsin judgment from James, who still resides in Florida. She commenced this legal malpractice action against Alton, claiming as damages the costs incurred in defending the Florida action and in attempting to reconcile the conflicting judgments in an unsuccessful federal

court action, as well as the loss of past and future child support payments. The jury found Alton 80% negligent, Mary 20% negligent, and made the following damage award:

| | |
|---|---|
| Florida attorney's fees | $ 25,209.44 |
| Federal court attorney's fees | 3,000.00 |
| Past child support | 5,304.00 |
| Future child support | 175,000.00 |

Alton first contends that Mary failed to prove a causal connection between his negligence and any damage to her. For purposes of this appeal, Alton concedes the negligence issue and challenges only Mary's proof of causation. Mary alleged at trial that Alton was negligent for failing to advise her to obtain a Florida attorney when she first told him of her husband's attempt to initiate Florida proceedings. Alton disputed this allegation, asserting that he advised her to obtain counsel in Florida. It was undisputed that Alton never made use of the registry provided for under the Uniform Child Custody Jurisdiction Act (UCCJA).

Mary contended at trial that her late response to the Florida divorce proceeding allowed the Florida divorce action to continue, thereby resulting in a custody decree in favor of her husband. That decree now prevents her from enforcing her Wisconsin divorce judgment for child support. In Alton's view, any damage suffered was caused by Judge Lee's failure to follow the procedures in the UCCJA, or, in the alternative, by advice given by Mary's Florida attorneys that caused her to lose custody in the Florida proceeding. We conclude that credible evidence supports the verdict.

831

The test of causation in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result. *Merco Dist. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 458, 267 N.W.2d 652, 654 (1978). The defendant's negligence need not be the sole factor or the primary factor, only a substantial factor. *Clark v. Leisure Vehicles, Inc.*, 96 Wis. 2d 607, 617, 292 N.W.2d 630, 635 (1980). There may be more than one substantial causative factor in any given case. *Merco,* 84 Wis. 2d at 459, 267 N.W.2d at 654-55. The question of causation is one of fact; on appeal, we review whether the evidence is sufficient to support the finding of causation by the trier of fact. *Id.* at 459, 267 N.W.2d at 655; *see also Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 127, 362 N.W.2d 118, 135 (1985) ("The question [of] what outcome should have followed if defendants had conducted a proper investigation, presentation (or exclusion) of evidence . . . remains a question of fact for the jury . . . reviewable on appeal only to the same extent as other factual determinations."). A jury's verdict will not be upset if there is any credible evidence to support it. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984).

■

Alton's contention that Judge Lee is to blame for Mary's inability to collect child support in Florida must fail for two reasons. First, the Florida appellate court has determined that Judge Lee did not err by assuming jurisdiction over the Soderlund divorce. Second, even if Judge Lee's conduct can be seen to be negligent, Wisconsin recognizes that there can be more than one substantial causative factor in a negligence case. Here, the UCCJA sets up a system for interstate judicial commu-

nication[1] in child custody cases by providing:

> Simultaneous proceedings in other states. (1) A court of this state shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.
>
> (2) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under s. 822.09 and shall consult the child custody registry established under s. 822.16 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
>
> (3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with ss. 822.19 to 822.22. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the

---

[1] We note that the result in the Soderlund divorce is precisely that which the UCCJA was designed to avoid. Because the issue before us is limited to a question of legal malpractice, we do not address what the appropriate resolution would be to the dilemma of these conflicting judgments.

court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

Section 822.06, Stats., and the substantially similar language of Fla. Stat. sec. 61.1314.

Another section of the UCCJA provides for a registry to be maintained in each state, to inform judges of pending custody actions in other states:

Registry of out-of-state custody decrees and proceedings. The clerk of each circuit court shall maintain a registry in which he or she shall enter the following:

(1)   Certified copies of custody decrees of other states received for filing;

(2)   Communications as to the pendency of custody proceedings in other states;

(3)   Communications concerning a finding of inconvenient forum by a court of another state; and

(4)   Other communications or documents concerning custody proceedings in another state which may affect the jurisdiction of a court of this state or the disposition to be made by it in a custody proceeding.

Section 822.16, Stats., and the substantially similar language of Fla. Stat. sec. 61.1334. Expert testimony at trial suggested that Alton should have utilized the registry either on November 14, when Mary received notice of the Florida action, or soon after November 29, when the Wisconsin court affirmed its jurisdiction.

Alton's contention that the negligence of Mary's Florida attorneys caused her harm must also fail on two grounds. First, any negligence alleged against those

attorneys relates to the advice given in 1987 when custody proceedings took place in that state. Absent Alton's negligence, however, the jury could find that there would have been no conflicting proceedings, and custody would have been determined by either Florida or Wisconsin in 1985. Second, as we have noted, Wisconsin recognizes that a given harm can be caused by more than one substantial factor. The jury's finding that Alton's negligence caused Mary's harm is supported by the credible evidence.

■

Alton next argues that the trial court erred by not requiring Mary to prove that she would have prevailed in the underlying custody dispute absent his negligence. Alton cites *Lewandowski v. Continental Cas. Co.*, 88 Wis. 2d 271, 276 N.W.2d 284 (1979), for the proposition that the requirements of causation dictate that the merits of the malpractice action depend upon the merits of the original claim. *Id.* at 277, 276 N.W.2d at 287. The trial court ruled that the valid Wisconsin judgment awarding custody to Mary settled the issue of whether she would have prevailed in the underlying custody dispute in 1985 absent Alton's negligence. We agree.

James received notice of the Wisconsin proceedings and, in fact, appeared at the initial hearing to contest the Wisconsin court's jurisdiction. He elected not to appear and contest the custody issue at the final hearing, and he did not appeal that final judgment. The children were represented by a guardian ad litem who was charged with representing their best interests in the Wisconsin proceeding. For these reasons, we affirm the trial court's decision that the Wisconsin judgment obviated the necessity of a "trial within a trial" to determine whether Mary would have prevailed in the underlying custody dispute.

Third, Alton contends that the trial court erred by excluding any evidence of Mary's alleged history of attempted suicide, substance abuse and child abduction subsequent to being awarded custody in Wisconsin. The admissibility of evidence is committed to the sound discretion of the trial court, and such rulings will not be overturned in the absence of an abuse of discretion. *Vonch v. American Std. Ins. Co.*, 151 Wis. 2d 138, 150, 442 N.W.2d 598, 602 (Ct. App. 1989).

Alton offered proof of these allegations, centering around conduct that allegedly occurred in 1987, both as relevant to the "trial within a trial" issue addressed above and to the issue his counsel termed "mitigation of damages." Although we agree with the trial court that conduct occurring in 1987 would not be relevant to the issue of whether Mary would have prevailed in a 1985 custody dispute, we conclude that such evidence would be relevant to the issue of the permanency of Mary's damages. We order a retrial on the issue of future damages.

Were Alton able to prove to a jury that Mary could have lost custody in 1987, her damages for future child support could have been significantly reduced. On retrial, Alton should be permitted to introduce evidence of her 1987 conduct that could have affected the Wisconsin court's ongoing determination of appropriate custody for the minor children. The evidence of an alleged suicide attempt and substance abuse would be material on this issue. However, evidence of what Alton terms "child abduction" would not be admissible. Regardless of how a Florida court may have viewed Mary's 1987 trip to Florida to pick up her children and return with them to Wisconsin, she was acting pursuant to a valid Wisconsin

836

judgment of custody. The Wisconsin court had issued a contempt of court order against James for his refusal to return the children. There was no conflicting Florida judgment on custody at the time she took this action.[2] Mary's conduct would not have influenced a Wisconsin court in its determination of continuing custody.

Fourth, Alton claims that the jury's award for future child support was not supported by the evidence. No jury may base its findings on conjecture or speculation. *Herbst v. Wuennenberg*, 83 Wis. 2d 768, 774, 266 N.W.2d 391, 394 (1978). Where no credible evidence exists to support a jury award, its verdict must be overturned. *Valiga v. National Food Co.*, 58 Wis. 2d 232, 242, 206 N.W.2d 377, 383 (1973). Alton's contention that the jury award for future child support damages is not supported by the evidence is divided into two claims: first, that Mary did not offer proof that she had made reasonable efforts to collect child support from James in Florida and, second, that the jury's award exceeds $95,142, which represents $744 per month child support for slightly over 127 months, until the children reached majority. Because we have ordered a new trial on the issue of damages for future child support, we do not address these contentions.[3]

---

[2]We do not suggest that Mary's removal of the children was an appropriate resolution of this conflict. We address only the issue of admissibility of this type of evidence at a custody hearing.

[3]Because it may become an issue on retrial, we note that the trial court ruled that the jury award of $175,000 in damages for future child support could be justified by taking into consideration the statutorily mandated 18% per annum interest on unpaid child support, concerning which the jury had received an instruction. This loss of interest on unpaid child support, however, is relevant only to a claim for past child support. Once Mary

■ On cross-appeal, Mary contends that the trial court erred by refusing to allow a verdict question on the value of legal services rendered gratuitously by her grandfather, Lucius Chase. In Wisconsin, the reasonable value of nursing services made necessary because of an injury is a compensable item, even when performed gratuitously by the husband of the injured party. *Redepenning v. Dore,* 56 Wis. 2d 129, 137, 201 N.W.2d 580, 585 (1972). The measure of these damages is what these services would reasonably and customarily cost in the community. *Id.* Mary does not cite us to any case where recovery was allowed for the provision of gratuitous legal services.[4] We need not address this issue, however, because even were the cost of these services recoverable under the broad rule of *Widemshek v. Fale,* 17 Wis. 2d 337, 339-40, 117 N.W.2d 275, 276 (1962) (an attorney who is negligent in the performance of his duties to his client is liable for all damages sustained as a proximate result of his negligence), the value of the services Chase performed were not established by the evidence.

Chase had prepared no time records to support a claim of legal services performed on Mary's case. Mary's counsel argued to the trial court that she could establish "time records by left hand to the extent that we have just

receives a lump sum payment to compensate her for loss of future child support, she no longer has a claim on uncollected interest applied to delinquent child support.

[4]Mary's citation to the rule of *Bonesteel v. Bonesteel,* 30 Wis. 511, 515 (1872), that an injured plaintiff may recover for legal expenses actually incurred, even though they may not have been paid, is inapposite. As Alton points out, in *Bonesteel* the court noted that "the liability of the plaintiff to pay" those fees is the ground of the damage. *Id.* The legal services in *Bonesteel* were not gratuitously performed.

admitted as an exhibit the time records of Mr. Dowling [Mary's Florida attorney] which show how much time he spent on the file" along with deposition testimony by Dowling that Chase spent "more time than I did on matters of legal research, less time than I did on court matters, and then on balance, he spent as much or perhaps more time than I did on the case." We agree with the trial court that as a matter of law such testimony is not sufficient to establish the value of Chase's services. It requires the jury to speculate on the time and value of his services. For this reason, we affirm the decision of the trial court to eliminate the value of Chase's services as an item of damage.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded. Costs denied to both parties.