N. E. FINCH COMPANY, for the Use and Benefit of Glen Falls Group, Subrogee, Plaintiff-Appellee, *v.* R. C. MAHON COMPANY, Defendant-Appellant.

Third District   No. 77-30

Opinion filed November 29, 1977.

John E. Cassidy, Jr., of Cassidy, Cassidy & Mueller, of Peoria, for appellant.

Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:
This is an appeal by the defendant, R. C. Mahon Company, from a judgment entered on a directed verdict of $18,000 in favor of plaintiff, N. E. Finch Company. Counts 2 and 3 of plaintiff's complaint were based on a theory of implied indemnity and sought recovery from defendant for an amount which plaintiff had paid to an employee of defendant pursuant to a settlement agreement. After the jury heard all the evidence, the court directed the verdict for plaintiff. The pertinent facts as concerns the indemnity action are essentially undisputed.

N. E. Finch Company is engaged in leasing heavy equipment such as cranes and trucks together with personnel to man the equipment. On February 1, 1966, Finch leased a crane and truck, together with personnel, to Mahon to be used in the construction of a new office building in downtown Peoria. The personnel included a crane operator. At this time, Mahon was engaged by Caterpillar Tractor Company as a decking contractor for the office building. The terms of the arrangements between Finch and Mahon provided that upon arrival of the crane and truck at the construction site, Mahon was to assume complete control and supervision of all Finch personnel assigned to operate the equipment and the personnel were so instructed by Finch. Mahon readily admits this fact.

Two employees of Mahon were directed to assist the leased crane in unloading a bundle of steel from a truck by attaching the crane's lifting cable to the bundle. After the cable was attached, the crane operator received a hand signal from one of Mahon's employees to begin lifting. The other Mahon employee, Eugene Watts, was either still positioned on the bundle when the crane operator began lifting it or the bundle shifted towards Watts as it was being lifted and he jumped on the load to avoid being hit. Whichever occurred, the result was that Watts was being lifted with the bundle into the air. The position of the crane operator prevented him from seeing what was happening. When the bundle was some distance from the ground and still raising, Watts either jumped or fell to the ground and was injured.

After receiving workmen's compensation for his injuries, Watts commenced an action against Finch based on common law negligence and alleged violations of the Structural Work Act. (Ill. Rev. Stat. 1975, ch. 48, pars. 60 through 69.) During the course of the Watts litigation, Finch requested Mahon to assume the defense of the Watts action and indemnify and hold Finch harmless for any liabilities incurred in the Watts action. Mahon rejected Finch's request. Finch then filed a motion to dismiss Watts' complaint. After the motion was denied and a trial appeared imminent, Finch and Watts conducted negotiations which resulted in a settlement by which Finch paid to Watts $12,000 and paid to Aetna Life & Casualty Company $6,000 as reimbursement for its lien under section 5(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(b)). The present action was commenced against Mahon to recover the amounts so paid.

On appeal, Mahon contends that because Finch could not have had any legal responsibility to Watts for the injuries he received, it cannot obtain indemnity from it by settling a claim for which it was not liable. Defendant argues that plaintiff was a legal volunteer in settling Watts' personal injury claim.

Without question, the law favors amicable settlements between litigants. In furtherance of this policy, rules should not be encouraged which allows a defendant no alternative but to litigate the question of his liability to a plaintiff in order to preserve his cause of action over against a prospective indemnitor. It is therefore unnecessary for a party seeking indemnity to obtain a judicial determination that it is liable to an injured party (*Sleck v. Butler Brothers*, 53 Ill. App. 2d 7, 202 N.E.2d 64), so long as that in settling the principal action, the prospective indemnitee is responding to a reasonable anticipation of personal liability. (*Nogacz v. Proctor & Gamble Manufacturing Co.*, 37 Ill. App. 3d 636, 347 N.E.2d 112.) But allowing a party to settle the initial action and still seek indemnity does not completely resolve the question of the effect and

consequences the settlement has upon a subsequent indemnity action.

■■■ By its very nature, an indemnity action is inextricably related to the principal or original action. At a very early date it was held that in cases involving contractual indemnity, a tender of defense to a prospective indemnitor bound him to all issues which were litigated in the initial action. (See Feirich, *Third-Party Practice*, 1967 U. Ill. L.F. 236, 262.) Such a position is equally applicable to cases involving noncontractual implied indemnity. The principal issue then is the extent to which the prospective indemnitor is bound by a settlement after the defense of the original action has been tendered to him and refused. Stated correlatively, to what extent is Mahon entitled in the indemnity action to litigate the question of Finch's liability to Watts in an effort to defeat Finch's claim for indemnity.

Of crucial if not determining significance in this regard is the fact that Finch afforded Mahon the opportunity to defend the Watts action, but Mahon refused. We believe that once defense of the principal action has been tendered to the prospective indemnitor and refused by him, the indemnitor can not thereafter assert that the indemnitee was a legal volunteer who gratuitously settled the initial action. This is true even where, as in this case, the indemnitor seeks to establish the nonliability of the indemnitee by admitting that the crane operator was its employee and a fellow servant of Watts, the person injured. In the principal action it was asserted that the crane operator was an agent of Finch, raising at least a question of Finch's potential liability, notwithstanding Mahon's position in the indemnity action that no such liability existed. In the principal action it was also asserted that Finch was liable for a violation of the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60 through 69) as an owner, a liability not predicated upon the agency of the crane operator. Nor do we think the indemnitor is entitled to question the amount of the settlement (*Deel v. United States Steel Corp.*, 105 Ill. App. 2d 170, 245 N.E.2d 109) absent fraud or collusion between the parties to the settlement. *Carver v. Grossman*, 6 Ill. App. 3d 265, 285 N.E.2d 468, *rev'd on other grounds*, 55 Ill. 2d 507, 305 N.E.2d 161.

■■ The proper time for an indemnitor to assert the nonliability of the indemnitee to the plaintiff in the original action is in the original action. The prospective indemnitor has a direct interest in defeating the principal action for which indemnity may be later sought. (*Drennan v. Bunn*, 124 Ill. 175, 16 N.E. 100.) By having such an interest, the opportunity to defend, and refusing that opportunity, the indemnitor is precluded from thereafter asserting the nonliability of the defendant to the plaintiff in the principal action as a means of avoiding liability for indemnification. Such a position finds support in *Chicago, R. I. & P. R. v. Dobry Flour Mills, Inc.* (10th Cir. 1954), 211 F.2d 785, wherein it is stated:

"[W]here the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage. * * * A contrary rule would make the right to settle meaningless in cases where the indemnitor has denied liability." (211 F.2d 785, 788.)

We recognize that the foregoing case involved contractual indemnity, but we perceive no reason why the reasoning should not be equally applicable to cases involving non-contractual implied indemnity.

The remaining question concerns Mahon's claim that as a matter of law, there is not the qualitative distinction between the conduct of Finch and Mahon that is necessary before indemnity will lie. Recently the Illinois Supreme Court has approved new pattern jury instructions related to indemnity actions. (Illinois Pattern Jury Instructions, Civil, Nos. 500.01 through 500.26 (1977 Supp.).) While these instructions were not in effect when this case was tried, the language employed is illustrative of the principles applicable to indemnity cases. Stated in the terms employed by the new instructions, a cause of action for indemnity would not lie if either Finch was guilty of major fault or Mahon was not guilty of major fault.

We agree with the defendant that inaction or passivity on the part of an indemnitee may well constitute the primary cause of an injury and hence preclude indemnity. Use of the terms "active" and "passive" to distinguish the degrees of fault involved in an indemnity case was rejected in the new IPI instructions primarily because of the connotations of action and inaction commonly associated with them. Instead, the terms major and minor fault are now employed. Omission of an act may often constitute the major cause of an injury as much as an affirmative act. However, upon careful consideration of the facts presented in this case, we believe the trial court was correct in directing a verdict in favor of Finch.

■■ The terms of the lease agreement placed all control and supervision of the equipment and its personnel with Mahon. Mahon has conceded that the crane operator was under its control and supervision and that it was the conduct of the crane operator which caused the injuries to Watts. The only conduct that connected Finch with Watts' injury was supplying the equipment and personnel upon which Watts was injured. Undoubtedly Finch has a duty to provide equipment free from dangerous defects. But, the evidence overwhelmingly establishes that it was the negligence of persons within the exclusive control and custody of Mahon which was the major cause of Watts' injury. Within the confines of the *Pedrick* rule, the trial court was correct in granting a directed verdict in favor of Finch.

578

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

STENGEL, P. J., and BARRY, J., concur.