Todd DEMINSKY, Plaintiff-Respondent,†

v.

ARLINGTON PLASTICS MACHINERY, Locator Corporation, Alpha Omega Plastics Company, Conair, Inc., and Steadfast Insurance Company, Defendants,

IMAGE PLASTICS, INC. and Federated Mutual Insurance Company, Defendants-Appellants.†

Court of Appeals

*No. 01–0242. Submitted on briefs July 9, 2001.—Decided November 29, 2001.*

2001 WI App 287

(Also reported in 638 N.W.2d 331.)

† Petitions to review granted 2-19-02.

442

445

446

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Robert E. Salmon, Richard L. Pemberton, Laura J. Hanson* and *Erica Gutmann Strohl* of *Meagher & Geer, P.L.L.P.*, Minneapolis, Minnesota.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John P. Richie* of *Misfeldt, Richie, Wickstrom & Wachs*, Eau Claire, *David E. Richie* of *Danielson, Guettinger, Richie & Manydeeds, S.C.*, Eau Claire, and *Raymond L. Hoel* of *Hoel Law Office*, Cornell.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Image Plastics, Inc. and its insurer, Federated Mutual Insurance Company, appeal a $1.7 million judgment entered against them in favor of Todd Deminsky for injuries he sustained while operating a plastic-grinding machine.[1] Image, which purchased the machine from Arlington Plastics Machinery, contends that an indemnity provision in Arlington's favor contained in a sales order for the machine should not be enforced. Image further contends that, even if the indemnity provision is valid, Image cannot be bound to the terms of Arlington's subsequent settlement with Deminsky, upon which the

---

[1] We will refer to the appellants, Image and Federated, collectively, as Image except where it is necessary to separately identify them. Neither the seller of the machine, Arlington Plastics Machinery, nor any of the other entities named in the caption as defendants are parties to this appeal.

appealed judgment is based. We conclude that the indemnity provision is a part of Image's contract with Arlington, and that the provision is enforceable against Image. We also conclude, however, that Image is *not* bound by the Deminsky-Arlington settlement, and Image is thus entitled to litigate the extent of Arlington's liability to Deminsky for damages. We therefore reverse the appealed judgment and remand to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND[2]

¶ 2. Image Plastics, Inc. is a Wisconsin corporation engaged in the business of recycling and reprocessing plastic. As the result of a request from a customer, and in an effort to increase its revenues, Image decided to purchase a machine which could grind up plastic snow fencing. The owner of Image, Gregory Harm, contacted John Clarke, the president of Arlington Plastics Machinery, an Illinois corporation that buys and sells used plastic processing machinery, and from whom Image had previously purchased equipment. Clarke told Harm that he had a machine that might work. Harm then traveled to Arlington's plant in Illinois for a "physical inspection" of the machine, carrying with him some of the snow fencing to test on the machine.

¶ 3. After Harm's inspection of the machine, he agreed to purchase it, giving Clarke a "verbal purchase order." Clarke then had his secretary type up the order on an Arlington sales order form. Clarke testified at his

---

[2] The case is before us on summary judgment. Both parties moved for summary judgment in their favor, and neither argues that summary judgment is unavailable because material facts are in dispute. The background facts are taken from the materials the parties submitted on their cross-motions for summary judgment.

deposition that he does not remember whether the sales order form was typed and mailed to Harm, or if it was given to Harm on the day of his visit to the Arlington plant. Clarke also did not remember the specifics of what he may have told Harm regarding the written contract, but he testified that, customarily he would tell a customer to review the sales order and call him if there were any questions. Harm testified that before leaving the Arlington plant, he had "made an agreement with [Clarke] that I was going to buy" the machine. He also acknowledged that he signed and returned the sales order form to Arlington, and that he was aware there was "wording on the back" of the form.

¶ 4. The following language on the sales order form for the grinder is relevant to the issues in this appeal:

### TERMS AND CONDITIONS

WE [Arlington] ACCEPT YOUR ORDER ONLY ON THE EXPRESS CONDITION THAT YOU ASSENT TO THE TERMS CONTAINED BELOW AND YOUR ACCEPTANCE AND RECEIPT OF THE GOODS SHIPPED HEREUNDER SHALL CONSTITUTE ASSENT TO SUCH TERMS. . . .

. . . .

### 3 - BUYER'S INDEMNITY OF ARLINGTON.

A. WARNING- . . . Buyer expressly agrees as a condition of its purchase of these items that it will indemnify and hold Seller harmless from any and all claims that may hereafter at any time be asserted by any subsequent owner or user of the items sold hereunder or asserted by any agent or employee of such user or by any third party arising from any purported defect in the items or by reason of the use of these items. . . .

B. HAZARDS LIABILITY-Purchaser shall indemnify and hold harmless Seller . . . from and against any and all losses, expenses, demands, and claims made against Seller . . . by Buyer, [and] any . . . employee of Buyer . . . because of injury or illness or alleged injury or illness (including death) . . . actual or alleged whether caused by the sole negligence of Seller, the concurrent negligence of Seller with Buyer . . . or any other person or otherwise arising out of, resulting from, or in any way connected with the operation, maintenance, possession, use, transportation, or disposition of the Articles. . . . Buyer agrees to defend any suit action or cause of action brought against Seller, its agents, servants, or employees based on any such alleged injury, illness, or damage and to pay all damages, costs, and expenses including attorney's fees, in connection therewith or resulting therefrom.

¶ 5. The sales order bears a date of November 3, 1995. Harm signed and dated it three days later and faxed a signed copy back to Arlington on November 6th. Clarke had filled out an "Estimate and Repair Order" on November 3rd to have the machine cleaned, painted and tested. A "Sales Information Sheet" was also generated by Arlington on November 3rd, indicating that the machine had been sold to Image. After Image forwarded payment of the $10,000 purchase price, the grinder was transported to Image's plant in Wisconsin. Within the next year, Deminsky was seriously injured while operating the machine after his sweatshirt sleeve got caught in the rotating gears, pulling his right arm through and mutilating it.[3]

---

[3] Deminsky was employed by Image at the time he sustained his injuries, but Image's liability under the appealed judgment is based solely on its contractual liability for Arlington's acts or omissions, not on any acts or omissions on Image's part relating to the use or maintenance of the machine.

450

¶ 6. Deminsky filed suit against Arlington, alleging that the grinder was unreasonably dangerous and in a defective condition when it left Arlington's possession, and further that Arlington had been negligent in altering a guard on the machine. Deminsky subsequently impleaded Image and its insurer, Federated, based on the indemnity provision in the sales order. Soon after impleading Image, Deminsky and Arlington entered into a "Stipulation for Entry of Judgment." The circuit court approved the stipulation and entered a $1.475 million judgment against Arlington in Deminsky's favor. Subsequently, on cross-motions for summary judgment, the court entered judgment for Deminsky against Image for the full amount of the Arlington judgment, plus interest and costs. Image appeals.

¶ 7. Additional background facts are included in the analysis which follows.

## ANALYSIS

■

¶ 8. We review a circuit court's grant or denial of summary judgment de novo, owing no deference to the trial court's decision. *Waters v. United States Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). "[S]ummary judgment is appropriate when

---

*See* WIS. STAT. § 102.03(2) ("[T]he right to the recovery of [worker's] compensation . . . shall be the exclusive remedy against the employer."); *Algrem v. Nowlan,* 37 Wis. 2d 70, 75, 154 N.W.2d 217 (1967) (" '[T]he rule of no liability of the employer over and above that imposed by the Workmen's Compensation Act does not apply in case of an *express* agreement for indemnification.' " (citation omitted)). (All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.)

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995); WIS. STAT. § 802.08(2).

¶ 9. We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). In our review, we, like the trial court, are prohibited from deciding issues of fact; our inquiry is limited to a determination of whether a factual issue exists. *Id.* Here, both Image and Deminsky moved for summary judgment. When both parties move for summary judgment and neither argues that factual disputes bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (citation omitted).

## I.

¶ 10. Image claims the trial court erred in concluding that the indemnity provision set forth on the back of the sales order for the plastic-grinding machine was a part of its contract with Arlington. The parties agree that the Uniform Commercial Code governs the transaction between them, and that both Wisconsin and Illinois have adopted the Code. At least with respect to the initial questions presented in this appeal (when did a contract between Image and Arlington for the purchase and sale of the machine arise, and what were its terms), the parties acknowledge that our answers would be the same under the law of either

452

state. Accordingly, we will rely exclusively on Wisconsin statutes and precedents for this part of our analysis. *Sharp v. Case Corp.*, 227 Wis. 2d 1, 10–11, ¶ 17, 595 N.W.2d 380 (1999) (When examining a conflict of laws issue, "[i]f the laws of the two states are the same, we apply Wisconsin law.").

¶ 11. Image contends that when its president, Gregory Harm, left the Arlington plant on November 3, 1995, the parties had entered into an oral contract under which Image had agreed to buy, and Arlington had agreed to sell, the grinding machine for $10,000. Image points out that Arlington immediately began processing the order by issuing an "Estimate and Repair Order" to service the machine and a "Sales Information Sheet," which indicated that the machine had been sold, both documents being dated November 3rd. Image notes that under Wis. Stat. § 402.204(1), "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." In Image's view, the parties recognized their oral contract by their subsequent conduct in processing and delivering the machine on the one hand, and accepting and paying for it on the other.

¶ 12. The indemnity provision, according to Image, was thus introduced after the formation of the parties' contract, and because it was never discussed or negotiated, it cannot be a part of the contract and is invalid. For support of its contention, Image relies on Wis. Stat. § 402.207[4] and several cases applying its

---

[4] WISCONSIN STAT. § 402.207(1) and (2) provide as follows:

402.207 Additional terms in acceptance or confirmation.

**(1)** A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time

provisions. *See, e.g., Air Prods. & Chems., Inc. v. Fairbanks Morse, Inc.*, 58 Wis. 2d 193, 214, 206 N.W.2d 414 (1973) (concluding that a proposed additional term which "materially alter[s]" a contract requires an "express conversation between the parties over its inclusion or exclusion in the contract"); *Resch v. Greenlee Bros. & Co.*, 128 Wis. 2d 237, 244–45, 381 N.W.2d 590 (Ct. App. 1985) (holding "as a matter of law" that an indemnification provision contained in an invoice shipped with a machine constituted a "material alteration under sec. 402.207(2)(b)," and thus could not be deemed a part of the parties' contract absent "express agreement between the parties concerning its inclusion or exclusion").

¶ 13. Deminsky, on the other hand, maintains that the parties had not entered into a binding contract until Harm signed and returned Arlington's "Sales Order," whose terms, including the indemnification provision, became the contract governing this transaction. For support, Deminsky looks to WIS. STAT. § 402.201, the UCC's "statute of frauds," which provides that, with certain exceptions, "a contract for the sale of goods for the price of $500 or more is not

operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." Section 402.201(1). Alternatively, in the event we were to conclude that a binding, oral contract preceded the signing and return of the sales order, Deminsky points to WIS. STAT. § 402.209(1), which permits "[a]n agreement modifying a contract" to be binding without additional consideration.

¶ 14. We conclude that it is not necessary for us to decide whether Image and Arlington had an enforceable contract for the purchase and sale of the grinding machine before Image signed and returned the sales order. In this respect, we agree with Image that WIS. STAT. § 402.201 is not dispositive, given that the present dispute is not over whether either party could have held the other as bound to either deliver or accept the machine based on the oral agreement of November 3rd. That is, the question is not whether or when the parties entered into a binding contract, because they clearly did so at some point; rather, the question is: What were the terms of their contract? *See Waukesha Foundry, Inc. v. Industrial Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996).

■

¶ 15. We thus agree with Image that WIS. STAT. § 402.207(2)(b) is the UCC provision most relevant to the resolution of the present dispute. We also have no difficulty in concluding that the indemnification provision at issue, which shifted to Image all liability for Arlington's negligence and for any hazards associated with the machine, was a "material" term of, or alteration to, the parties' contract. *Resch*, 128 Wis. 2d at 244. The flaw in Image's argument, however, arises

from the fact that its agent, Gregory Harm, promptly signed and returned the sales order, thereby communicating Image's agreement with the terms proposed by Arlington. The official comment to UCC § 2–207 explains:

> Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included *unless expressly agreed to by the other party.*

Official UCC Comment 3, WIS. STAT. ANN. § 402.207 (West 1995) (emphasis added).

■

¶ 16. Deminsky asserts in his response brief that all of the precedents on which Image relies, in which courts have refused to incorporate "material alterations" in parties' contracts, involved written confirmations or acceptances that were never signed by the non-proposing party. Image neither refutes this observation in its reply brief, nor does it explain why its cited authorities should control notwithstanding this crucial distinguishing fact. Moreover, we note that even where a party does *not* sign a writing containing a proposed "material alteration" to a contract of sale, that party may still be deemed to have assented by conduct to its incorporation. The court in *Waukesha Foundry, Inc.,* applied Wisconsin law to a dispute under UCC § 2–207 involving "remedy limitations and warranty disclaimers" set out by the seller in its invoices which accompanied or followed delivery of the purchased goods. *Id.* at 1005. Even though the buyer had not expressly assented to these terms, the court concluded it was bound by them, noting that " '[e]ven if the alteration is material, the other party can, of course, decide to accept it,' "

456

and that the buyer had done so via its course of dealings with the seller. *Id.* at 1009 (citation omitted).

■

¶ 17. Here, then, we conclude that, regardless of whether the parties had a binding contract on November 3, 1995, or three days later when Image signed and returned the sales order, Image expressly agreed to the indemnification provision by signing and returning the form containing the provision. The "express conversation" described in *Air Products*, 58 Wis. 2d at 214, occurred when Arlington said to Image, through the language of its sales order, "we want our contract for the sale of this machine to include a very broad indemnification agreement in our favor," and Image replied, "o.k.," by signing the order form below the word "AGREED" and returning it to Arlington. The fact that Harm may not have read the terms and conditions spelled out on the order form does not relieve Image from being bound by them, there being no issue of fraud, ambiguity or mutual mistake present on these facts. *See Nauga, Inc. v. Westel Milwaukee Co., Inc.*, 216 Wis. 2d 306, 314, 576 N.W.2d 573 (Ct. App. 1998).

¶ 18. The indemnification provision was thus a part of the Image-Arlington contract, and Image is bound by it, unless the provision is for some other reason unenforceable, a question we next consider.

II.

■

¶ 19. We next address Image's contention that the indemnity provision is unenforceable on public policy grounds, or because it is inconspicuous or unconscionable. We must first decide whether we should apply Wisconsin law or Illinois law to these inquiries. Wiscon-

sin courts have recognized that parties to a contract may expressly agree that the law of a particular jurisdiction shall control their contractual relations. *Bush v. National Sch. Studios, Inc.,* 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987); *see also* Wis. Stat. § 401.105(1) ("[W]hen a transaction bears a reasonable relation to this state and also to another state . . . the parties may agree that the law either of this state or of such other state . . . shall govern their rights and duties."). The sales order that Image signed and returned to Arlington provided as follows: "This contract and all causes of action relating to the sale is to be construed according to the laws of the State of Illinois."

¶ 20. Image argues, however, that "fundamental public policies" of the State of Wisconsin require that we apply Wisconsin law to the question of the enforceability of the indemnity provision, lest an Illinois seller be permitted "to foist its strict products liability duties on the Wisconsin employer through an onerous, boilerplate indemnity agreement." *See Bush,* 139 Wis. 2d at 642 (noting that the parties' stipulation of applicable law "cannot be permitted . . . at the expense of important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded"). Deminsky responds that the choice of law provision in the Arlington sales order is valid, and that Illinois law should thus govern. He asserts, however, that even if Wisconsin law is applied, the indemnity provision is enforceable. We agree and will discuss the Wisconsin precedents.

¶ 21. Indemnity provisions such as the one before us are strictly construed against the indemnitee. "It is a settled rule in this state that [indemnity] agreements are to be broadly construed where they deal with the

negligence of the indemnitor, but strictly construed where the indemnitee seeks to be indemnified for his own negligence." *Baker v. McDel Corp.*, 53 Wis. 2d 71, 76, 191 N.W.2d 846 (1971). "There must be an express provision in the agreement to indemnify the indemnitee for liability occasioned by its own negligence. Such an obligation will not be found by implication." *Webster v. Klug & Smith*, 81 Wis. 2d 334, 340, 260 N.W.2d 686 (1978). We have no difficulty concluding that the indemnity provision at issue expressly obligates Image to indemnify Arlington for liability occasioned by Arlington's own negligence or by any hazards associated with the machine Arlington sold:

> Purchaser shall indemnify and hold harmless Seller . . . from and against any and all losses, expenses, demands, and claims made against Seller . . . by Buyer, any agent, servant, or employee of Buyer, any subsequent Purchasers . . . any Lessor or Lessee . . . or any other person because of injury or illness or alleged injury or illness (including death) or property damage actual or alleged *whether caused by the sole negligence of Seller,* the concurrent negligence of Seller with Buyer . . . or any other person *or otherwise arising out of, resulting from, or in any way connected with the operation maintenance, possession, use, transportation, or disposition of the Articles* . . . .

(Emphasis added.)

¶ 22. Image contends, however, that the indemnity provision violates the public policy of Wisconsin because it would "permit Arlington to foist its nondelegable duties on someone else." These duties, according to Image, include the duties "to provide a reasonably safe finished product," "to install a feasible safety device," and to "provide . . . warning or other operating information." We agree with Deminsky, however, that

the indemnity provision in no way delegates these duties of the seller of a product to Image. The provision simply shifts the potential financial cost for Arlington's breach of these duties from Arlington to Image. As the supreme court has explained in upholding an indemnification agreement which shifted the cost of liability away from a contractor charged with the duty of maintaining a "safe place" under the Wisconsin statute:

> It is argued, however . . . that, although the contract on its face be applicable, it is contrary to public policy, because it permits the general contractor to avoid the nondelegable duties that are imposed upon him by the safe place statute. It is contended, therefore, that this indemnification agreement is void as being against public policy. Because the contract does not delegate McKee's safe place duty to Ahern, we find that argument totally unconvincing.

> It is, of course, clear that the duty of an owner or employer under the safe place statute is nondelegable. To recite this maxim, however, is not explanatory of its meaning. Ahern in this case contends that it means that the ultimate financial liability for damages occasioned by the violation of the safe place statute must rest upon the party who violates the safe place statute. Ahern contends, therefore, that the financial exoneration of McKee, who had the statutory safe place duty, violates public policy. We conclude, however, that this shifting of responsibility through either the principles of common law indemnity or contractual indemnity is not what is meant by the statement that the duties under the safe place statute are nondelegable. . . .

> . . . .

> It is apparent from . . . early cases that the duty of an owner or employer to keep the premises safe under both the common law and the safe place statute had nothing to do with his right to financial recoupment

460

from another party either by operation of law or by contract. All that is meant by the statement that duties under the safe place statute are nondelegable is that the person who has that duty cannot assert that another to whom he has allegedly delegated the duty is to be substituted as the primary defendant in his stead for a violation of safe place provisions. Under any circumstance, it is the owner or the employer who must answer to the injured party. Whether that owner or employer is to be made financially whole from another source by principles of law or contract is an entirely different question.

*Dykstra v. Arthur G. Mckee & Co.*, 100 Wis. 2d 120, 130–32, 301 N.W.2d 201 (1981) (footnote and citations omitted).

¶ 23. We conclude therefore that there is no public policy basis on which to invalidate the indemnity provision. What remains is for us to determine whether the indemnity provision should not be enforced because it is either inconspicuous or unconscionable. We conclude it is neither. Image relies on the supreme court's discussion in *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 86–89, 557 N.W.2d 60 (1996), regarding the need for "exculpatory contracts," or waivers of liability, to "clearly and unequivocally communicate to the signer the nature and significance of the document being signed." *Id.* at 86–87. To the extent that the *Yauger* discussion is relevant in the present context of an indemnity provision in a sales order between merchants, we conclude that the indemnity provision is not void for inconspicuousness.

¶ 24. The writing on the front of the sales order, directly above the buyer's signature line, draws the buyer's attention to the terms on the back of the sales

461

order: "The terms and conditions on the reverse side are part of this agreement as effectively as though they precede the signature of the purchaser." The indemnity provision itself is set out directly under a bold-face, capitalized heading which reads: **"BUYER'S IN-DEMNITY OF ARLINGTON."** We are satisfied that, had a representative of Image perused the Arlington sales order, he or she would have had no difficulty ascertaining that Image was assuming the obligation to indemnify Arlington for any and all liability arising out of the use or operation of the purchased machine. That is, "the document when looked at in its entirety . . . clearly and unequivocally communicate[s] the nature and significance" of the indemnity provision. *Id.* at 88–89.

¶ 25. Finally, Image contends that the indemnity agreement is void as unconscionable and as a contract of adhesion. Again, we disagree. On this issue, Image directs us to the supreme court's discussion and conclusions in *Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co.*, 117 Wis. 2d 587, 345 N.W.2d 417 (1984), where the court noted that unconscionability may be found where meaningful choice is absent for one party and the contract terms are unreasonably favorable to the other party. *Id.* at 601. Similarly, a contract is said to be one "of adhesion" when it involves parties of unequal bargaining power, is a form contract "submitted on a 'take it or leave it' basis," where one party has effectively "no choice but to accept the contract." *Katzke v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212–13, 341 N.W.2d 689 (1984). For present purposes, we will consider these claims together, it appearing that the factors that would render the present contract one

"of adhesion" are subsumed in our consideration of its alleged procedural unconscionability.

¶ 26. Whether a contract provision is void for unconscionability is a question of law, which we decide de novo. *Leasefirst v. Hartford Rexall Drugs, Inc.*, 168 Wis. 2d 83, 89, 483 N.W.2d 585 (Ct. App. 1992) (citing *Discount Fabric House*, 117 Wis. 2d at 602). In order to "tip the scales in favor of unconscionability," a "certain quantum of procedural plus a certain quantum of substantive unconscionability" must be present. *Discount Fabric House*, 117 Wis. 2d at 602. We have addressed to some degree both aspects in concluding above that the indemnity provision does not violate public policy and that it was not inconspicuous. The facts that representatives of Image and Arlington did not orally discuss the provision, and that Image's representative signed the sales order without reading its terms, in our view, do not tip the balance in favor of unconscionability, as Image contends. The record indicates that the same indemnity provision was contained in other sales orders for products Image purchased from Arlington. Moreover, Image's president, Gregory Harm, had a reasonable opportunity to review the sales order before signing and returning it, inasmuch as it was either given to him when he visited the Arlington plant on November 3rd, or sent to him soon thereafter. That is, the form was not "pushed under his nose" to sign "on his way out the door."

¶ 27. In short, we conclude that the indemnity provision is neither unconscionable nor void as a contract of adhesion. Image suggests that it had no choice but to purchase the plastic-grinding machine from Arlington, and thus it was positioned similarly to the merchant in *Discount Fabric House*, who could contract

only with the telephone company in order to advertise in the yellow pages associated with the official directory. *Discount Fabric House*, 117 Wis. 2d at 603–04. It is clear from the record, however, that Image had alternatives to purchasing the Arlington grinder. In his deposition, Image's president, Harm, testified that he had information about other suppliers from trade books as well as references. He also testified that he remembered contacting at least one other supplier in Pennsylvania who was selling a more expensive machine. He chose Arlington, however, because of its location and because he could get a used grinder at a fraction of the cost of a new grinder. The record does not support Image's implication that Image was the weaker of the two parties, financially or otherwise. Moreover, Image could have elected to simply not expand its business to take on the new snow fence processing operation if a suitable machine was not available at a price and on terms it deemed acceptable.

¶ 28. We thus conclude that the indemnity provision in the parties' contract is enforceable. The provision in no way precludes Deminsky from seeking recourse for his injuries that may have been caused by Arlington's negligence or its sale of a defective product. That is, it is not an "exculpatory contract." The record indicates that Arlington chose not to procure liability insurance for its work and its products. If Arlington, as a corporate entity, is truly incapable of covering the potential costs of its liability,[5] Deminsky and others similarly situated are obviously better protected if

---

[5] As we describe below, the Deminsky-Arlington settlement agreement recites that Arlington contemplated bankruptcy as a result of the instant litigation.

Arlington is permitted to obtain and enforce indemnity agreements from its purchasers than if it is not.[6] When two businesses find it mutually beneficial to deal in goods for a lower price and an agreement for indemnification, we cannot see why this court should preclude them from doing so. The provision at issue does not violate public policy inasmuch as "[i]ts effect is to shift liability, under certain circumstances, not to extinguish it." *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 36, 284 N.W.2d 692 (Ct. App. 1979).

### III.

¶ 29. The final issue we must address involves the effect on Image, if any, of the settlement agreement entered into between Deminsky and Arlington. We first set out the events leading up to the trial court's entering judgment against Image.

---

[6] The Illinois Court of Appeals came to a similar conclusion in a case involving an equipment lessee's indemnification of the lessor for the lessor's "strict liability" for an alleged defect in the equipment, which resulted in injuries to an employee of the lessee:

> Notwithstanding that defendant [the lessee/employer] urges it is the party intended to be protected by strict products liability and the Federal Safety Appliance Act, in reality the party to be protected in this case is the individual who was allegedly injured, [the employee]. [The employee] is not deprived of any remedies if [the lessee] is required to indemnify [the lessor]. The indemnity agreement only affects the rights of [the lessee and the lessor], two corporations, vis-a-vis each other. It does not preclude [the employee] from suing and obtaining a judgment against [the lessor]. Thus, there is no attempt here by a lessor of a product to deprive an injured individual of a remedy by means of an exculpatory clause or limitation of remedy provision in a lease.

*Patton v. T.O.F.C., Inc.*, 398 N.E.2d 313, 320 (Ill. App. 1979).

¶ 30. Deminsky originally filed suit on May 18, 1998, naming only Arlington and its unknown insurer as defendants, alleging claims in strict product liability and negligence. On June 4, 1999, Arlington's counsel informed Image of the indemnity provision and tendered Arlington's defense in the Deminsky litigation to Image. Image apparently forwarded Arlington's request to its insurer, Federated. Meanwhile, upon learning of the indemnity provision through discovery, Deminsky filed an amended complaint on June 30, 1999, naming Image and Federated as additional defendants, and alleging that they were "directly liable" to him under the indemnification provision for all damages assessable against Arlington.

¶ 31. Federated informed Image by letter dated July 15, 1999, of the following:

> Federated will pay for Arlington's defense costs incurred in the Deminsky litigation under a reservation of rights.
>
> . . .If the indemnity agreement is valid under applicable law, the purchase [sic] order indemnification language meets the definition of an "insured contract" as that term is defined in Federated's general liability policy.
>
> . . .Image's obligation to provide Arlington a defense against the claims of the Deminsky lawsuit is covered under the Federated policy.
>
> . . .Federated will pay Arlington's defense costs only at the conclusion of the litigation. . . . Federated's decision to pay for Arlington's defense costs is made under a reservation of rights because, under both Wisconsin and Illinois law, the indemnity provision may prove invalid and void as against public policy. . . . In the event it is determined the contract is invalid under

Wisconsin or Illinois law, Federated will refuse to pay Arlington's defense costs as the indemnity clause would no longer constitute an "insured contract."

. . . .

With respect to the Amended Complaint and Mr. Deminsky's direct claims against Image Plastics, Federated will defend Image Plastics under a complete reservation of rights.

In a separate letter, dated July 13, 1999, which apparently enclosed a copy of Federated's "reservation of rights" letter to Image, Federated informed Arlington's counsel that it had no objection to his continuing representation of Arlington, but noted that fees would *not* be paid on an on-going basis due to the reservation of rights regarding "the validity of the indemnity agreement."

¶ 32. Image and Federated filed separate answers to the amended complaint on August 9, 1999, denying liability to Deminsky for his injuries. Image's pleading included reference to a motion to dismiss for failure to state a claim, and it was accompanied by a brief asserting that neither it nor Federated were directly liable to Deminsky as "insurers" of Arlington. On that same day (August 9th), Deminsky and Arlington executed and filed with the court a "Stipulation for Entry of Judgment." The stipulation included recitations that (1) there was a conflict in deposition testimony regarding whether the grinder had an interlock safety device when Arlington sold it to Image; (2) the disputed evidence "creates for Arlington a substantial exposure to liability"; (3) Arlington carried no liability insurance coverage for Deminsky's claim; and (4) Arlington "has neither the assets or the anticipated cash flow to defend

this case," and thus, "the defense costs alone would put Arlington into bankruptcy."

¶ 33. After noting Deminsky's "substantial" injuries and associated damages, the stipulation sets out the settlement agreement between Deminsky and Arlington. Arlington withdrew its answer and consented to entry of judgment against it in the amount of $1.475 million, "without costs." Arlington also assigned to Deminsky "any and all claims it currently has or may have in the future, for contribution, [or] indemnity . . . against any other person or entity." Deminsky agreed not to execute the judgment against Arlington; to pursue only Image, Federated or others to collect on it; and to indemnify and hold Arlington harmless for all costs and damages arising out of any cross-, counter- or other claims relating to Deminsky's claim and litigation.

¶ 34. Two days later (August 11, 1999), the court entered a judgment against Arlington for $1.475 million pursuant to the stipulation. Deminsky subsequently filed a second amended complaint which, among other things, cited his judgment against Arlington, the indemnity agreement and Arlington's assignment of its indemnification rights to him. Deminsky accordingly sought a judgment for $1.475 million, plus costs, against Image and Federated. Image moved for summary judgment, asserting that the indemnity provision was not part of its contract with Arlington, that the indemnity provision was unenforceable, and that, in any event, Image was in no way bound by the Deminsky-Arlington settlement and judgment. Deminsky also moved for summary judgment against Image, which the court ultimately granted, entering a judgment of just over $1.7 million against Image, which

included the $1.475 million in damages from the Deminsky-Arlington judgment, together with interest and costs.

¶ 35. Deminsky asserts that the entry of judgment against Image and Federated based on Arlington's consent to judgment and assignment of rights was proper because Image rejected Arlington's tender of its defense in the litigation. Deminsky contends that Illinois law should govern this issue because of the choice of law provision in the Image-Arlington contract. He further contends that, under Illinois law, Image forfeited any right to now defend against Deminsky's claim by refusing to defend Arlington. He relies on *N.E. Finch Co. v. R.C. Mahon Co.*, 370 N.E.2d 160 (Ill. App. 1977) for the proposition that "once defense of the principal action has been tendered to the prospective indemnitor and refused by him, the indemnitor cannot thereafter assert that the indemnitee was a legal volunteer who gratuitously settled the initial action." *Id.* at 163. Finally, according to Deminsky, Image is bound not only to the fact of Arlington's liability, but to the amount of Deminsky's damages as well, unless Image can prove fraud or collusion between the settling parties, which Deminsky asserts Image has not done or attempted to do.

¶ 36. We conclude that we must look to the law of Wisconsin to determine the effect upon parties to litigation in this state of a stipulated judgment entered by a Wisconsin court. As we have noted, Illinois law may have relevance to the interpretation and effect of the Image-Arlington contract, at least as between those parties. We have decided the contract issues in Arlington's, and thus in Deminsky's, favor. Deminsky commenced his litigation in Wisconsin, however, and he

has impleaded both resident and foreign defendants in this forum. Deminsky has thus elected to have his claims adjudicated under Wisconsin practice and procedure, as well as under our substantive law regarding when and how parties may become bound by judgments to which they were not a party.

¶ 37. Image argues that we should treat the Deminsky-Arlington consent to judgment and assignment of rights as a *Pierringer*[7] release, and therefore, that we must confirm that a plaintiff's settlement with one defendant does not bind non-settling parties, who remain free to litigate to conclusion all issues of liability and damages. We agree with Deminsky, however, that the *Pierringer* analogy does not fit well on the present facts, given that Image is not alleged to be a joint tortfeasor with Arlington, but Arlington's indemnitor. Although we conclude that the trial court erred in binding Image to the terms of the Deminsky-Arlington settlement and judgment, we do not rest our conclusion on any analysis borrowed from *Pierringer* and its progeny.[8]

¶ 38. Rather, we conclude, as Image also argues, that the proper analysis is under the law of issue preclusion, which addresses the question of when a party who did not directly participate in prior litigation,

---

[7] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

[8] We also conclude that it is unnecessary to address Image's arguments that binding it to the Deminsky-Arlington settlement would violate various state and federal constitutional protections, such as the right to due process, to a jury trial and to a "certain remedy in the laws."

may nonetheless be bound to an earlier adjudication of a specific issue. "[I]ssue preclusion[] is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). The doctrine may also be applied when "one party seeks to bar another from rearguing a prior adjudication in the same lawsuit." *Precision Erecting v. M&I Marshall & Ilsley*, 224 Wis. 2d 288, 301, 592 N.W.2d 5 (Ct. App. 1998). That is the case here: Deminsky contends that Image should not be permitted to "relitigate" either the issue of Arlington's liability for Deminsky's injuries or the amount of damages Deminsky suffered, because both issues were conclusively determined by the earlier judgment entered on the Deminsky-Arlington stipulation.

¶ 39. We conclude, however, that regardless of how a court might evaluate such factors as privity or lack thereof between Arlington and Image, or the "fairness" of permitting the "offensive" use of the Deminsky-Arlington judgment against Image,[9] there is a more fundamental impediment to binding Image to the stipulated judgment. Quite simply, Arlington's liability and the amount of Deminsky's damages were never "actually litigated," which is a prerequisite for precluding issues from being "relitigated." As we explained in *Heggy v. Grutzner*, 156 Wis. 2d 186, 456

[9] In determining whether issue preclusion applies, a court must first determine whether the party against whom issue preclusion is asserted was a party, or was in privity with or had sufficient identity of interest with a party, in the prior adjudication, and then decide if the application of issue preclusion comports with fundamental fairness. *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 224–25, 594 N.W.2d 370 (1999).

N.W.2d 845 (Ct. App. 1990), " '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, [the issue preclusion rule] does not apply with respect to any issue in a subsequent action.' " *Id.* at 193 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt e, 257 (1980)).

¶ 40. We also recognized in *Heggy* that "policy concern[s]" underlying the "default judgment exception to the issue preclusion rule" might not always be present, and thus, there may be circumstances in which a party could or should be precluded from litigating an issue, notwithstanding the fact that the issue had been previously determined by default. *Id.* at 194. Specifically, we concluded in *Heggy* that where a party had intentionally evaded service of process, and thus had actual notice of an action but intentionally failed to appear and litigate the issues, it was appropriate to preclude him from relitigating facts determined by a default judgment. *Id.* Here, however, we can find no reason to apply an exception to the exception, especially given the circumstances and timing of the Deminsky-Arlington settlement and judgment. As we have described, Deminsky amended his complaint to allege the Image-Arlington indemnity agreement, and to implead Image and Federated as parties liable thereunder for any damages assessed against Arlington. When Image communicated its intention to challenge the validity and enforceability of the indemnity provision, Arlington and Deminsky quickly executed their stipulation for judgment, filing it on the same day that Image filed its initial responsive pleadings. Image asserts that it had no advance notice of the impending settlement involv-

ing Arlington, and first learned of the $1.475 million judgment against Arlington after it was entered.[10]

¶ 41. In short, we cannot conclude on the present record that Image intentionally evaded an opportunity to litigate crucial issues, such that it should now be bound to Arlington's confessed judgment. Deminsky argues, however, that there is support in Wisconsin law for binding an indemnitor who refuses to defend an indemnitee to the terms of an indemnitee's settlement with an injured party. He cites *Illinois Central Railroad Co. v. Blaha*, 3 Wis. 2d 638, 89 N.W.2d 197 (1958), but we find the facts of the case readily distinguishable. The supreme court held that the indemnitor in *Blaha*, who was notified of pending litigation and declined a tender of the defense, was bound to the indemnitee's subsequent settlement of the injured party's claim. The "settlement," however, was for a discounted sum pending the appeal of a larger judgment, which had been entered on a jury verdict, and the settlement amount was actually paid by the indemnitee. *Id.* at 641–42. The court concluded that, in the indemnitee's subsequent action for recovery of the amount it paid, the prior judgment was conclusive on the issues of liability and damages, inasmuch as "these issues were fully tried" and the indemnitor "cannot now be permitted to have another jury pass upon" the questions. *Id.* at 647. As we have noted, neither Arlington's liability for Deminsky's injuries nor the amount of Deminsky's damages have

---

[10] In Arlington's letter tendering its defense to Image, Arlington did not inform Image that it was on the verge of confessing judgment to Deminsky, or that it would do so unless Image assumed its defense. Instead, Arlington stated that if a defense was not provided, it would be "forced" to bring third-party actions against Image and Federated in order to obtain the defense and indemnity to which it claimed entitlement.

been litigated before a judge or jury, and Arlington has not paid, and will never be required to pay, Deminsky any part of the $1.475 million judgment entered against it.

¶ 42. Deminsky also seeks to rely on Wisconsin cases involving liability insurers, such as *Radke v. Fireman's Fund Insurance Co.*, 217 Wis. 2d 39, 577 N.W.2d 366 (Ct. App. 1998), for the proposition that "[a] breach of the duty to defend . . . 'renders [an insurer] liable to the insured for all damages that naturally flow from the breach,' " including " 'the amount of the . . . settlement against the insured plus interest.' " *Id*. at 48 (citation omitted). Similarly, he asserts that in order to preserve its defense regarding the invalidity of the indemnity provision, Image should have first agreed to provide Arlington a defense, and then moved for a stay of proceedings on the liability issue while the indemnification issue was determined. *Id*. at 45.

¶ 43. Image, however, is a processor and recycler of plastics, not an insurer. We decline to inject into this case the law that has developed in Wisconsin to govern the duties owed by insurance companies to their insureds. As the facts of this case demonstrate, businesses may enter into indemnity agreements as adjuncts to their commercial transactions, often with little understanding of or attention paid to the full ramifications of such provisions. It is one thing to conclude that an indemnification provision is nonetheless binding on the parties to a sales contract, but quite another to say that the provision carries with it all of the duties undertaken by an insurer when it sells a contract of insurance.[11]

_____

[11] Moreover, as Image points out, it is not clear that an insurer of Arlington would necessarily be bound under Wiscon-

¶ 44. Finally, Deminsky claims that the presence of Federated, an insurer, which has acknowledged its obligations to Image if the indemnity provision is upheld, somehow requires a different result. First, we fail to see why the law should treat a business that happens to have the benefit of liability coverage for its "insured contracts" any differently than one that is not so fortunate. Furthermore, we reject Deminsky's assertion that Arlington was an "additional insured" under one or more of the policies Federated issued to Image.

¶ 45. Deminsky points to the definition of "an insured" in one of the policies Federated issued to Image: "[a]ny person . . . with respect to which [Image is] obligated by virtue of a written contract to provide insurance such as is afforded by this policy." According to Deminsky, Federated was thus also *Arlington's* insurer, and Federated became bound on the Deminsky-Arlington judgment after failing to defend Arlington, given the duties of an insurer under *Radke*. We conclude, however, that the indemnity provision in the Image-Arlington sales order was not a "contract to provide insurance." The only mention of "insurance" in the Image-Arlington sales order is a provision which

sin law to the terms of the Deminsky-Arlington settlement. The plaintiff in *Radke* had actually paid $35,000 to the injured party in settlement of a federal court action, and sought to recoup that sum from his homeowner's insurer. *Radke v. Fireman's Fund Ins. Co.*, 217 Wis. 2d 39, 577 N.W.2d 366 (Ct. App. 1998). Here, Arlington paid Deminsky nothing, and Deminsky agreed not to execute on his judgment against Arlington, and further to indemnify Arlington against any all claims for contribution or similar claims. With no possibility of exposure, Arlington had no incentive to negotiate a reasonable or realistic settlement of Deminsky's claim.

required Image to obtain and show proof of its own insurance coverage prior to loading, transporting or otherwise handling the grinding machine on Arlington's premises. *See Campion v. Montgomery Elevator Co.*, 172 Wis. 2d 405, 415–16, 493 N.W.2d 244 (Ct. App. 1992) (recognizing that an indemnity provision and an agreement to provide insurance are separate and distinct obligations).

## CONCLUSION

¶ 46. For the reasons discussed above, we reverse the appealed judgment and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.