MERCO DISTRIBUTING CORPORATION, Plaintiff-Respondent, v. COMMERCIAL POLICE ALARM COMPANY, INC., Defendant-Appellant.†

*No. 75–442. Argued June 5, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 652.)

† Motion for rehearing denied, with costs, on August 16, 1978.

For the appellant there was a brief by *Timothy F. Mentkowski,* and *Riordan, Crivello, Sullivan & Carlson* of Milwaukee, and oral argument by *Mr. Mentkowski.*

For the respondent there was a brief by *Barnett W. Franks,* attorney, and *John J. Romann,* of counsel, both of Milwaukee, and oral argument by *Mr. Romann.*

SHIRLEY S. ABRAHAMSON, J. Commercial Police Alarm Company, Inc. contracted to provide burglar alarm services to Merco Distributing Corporation.

Commercial contends on appeal that its negligence did not cause Merco's injury. The alarm system Commercial used included wires around the doors and infra-red beams which crossed the building. When the system is

activated, anyone entering the doors or crossing through one of the beams causes a signal in Commercial's office. Commercial then notifies the police and sends its representative to the premises.

Merco was responsible for activating the alarm system each day when the warehouse was closed and the employees left. There was testimony that Merco activated the system at 5:00 p.m. on December 4, 1973, and that the equipment at the Merco warehouse indicated that the alarm system was properly set.

However, Commercial did not receive the "closing signal" from Merco. Commercial's normal procedure when it fails to receive a closing signal is to call the customer's place of business to determine whether the alarm has not been set because someone is working late. If no one answers the call, Commercial then calls the persons on a list provided by the customer to notify the customer that the alarm has not been set.

On December 4, 1973 Commercial called the Merco warehouse at 5:15 p.m. but received no answer. Commercial did not attempt to contact the residences of any of the five or six Merco employees whose names had been given to Commercial. Merco's president testified that Merco had a policy of not leaving the building unattended when the alarm system was not working, that if he, or another employee, had received a call on December 4th, someone would have gone promptly to the warehouse to reset the alarm, and that if the system were not working, someone would have stayed on the premises until the system was repaired.

At 6:25 p.m. on December 4th, Commercial received notice that the telephone lines which connected Merco's alarm system, as well as those of several other customers, to Commercial's office, were out of order. After learning that the telephone lines were out, Commercial still made no effort to contact Merco employees. Commercial's representatives testified that the telephone line breakdown was the result of two days of steady rain. So many

lines were and had been out of order that Commercial's employees were overworked and unable to follow the normal customer notification procedures. There was no evidence as to when the telephone lines were repaired. They were functioning by 8:00 a.m. on December 5th when Commercial received Merco's normal opening signal.

Sometime between 5:00 p.m. December 4th and 8:00 a.m. December 5th, burglars entered Merco's warehouse and took 58 television sets. Commercial received no alarm signal. On December 5th, after the burglary, it was discovered that the alarm wires around a rear fire door had been disconnected on the inside of the warehouse so that entry or exit through that door would not have set off the alarm signal even if the system were functioning properly. There was testimony that on December 3rd, the day before the burglary, someone claiming to be from Commercial worked on the alarm system near the rear fire door. Merco had made no request for service. Although there was no evidence that the infra-red beams had been interfered with, there was testimony that one familiar with their placement could avoid setting off the alarm simply by stepping over them. Tire marks were found outside the fire door the morning following the burglary, supporting the inference that entry had been made through that door.

If Commercial's negligence caused Merco's injury, Commercial is liable therefor. The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result. *Kinsman v. Panek,* 40 Wis.2d 408, 417, 162 N.W.2d 27 (1968); *Nelson v. Travelers Ins. Co.,* 80 Wis.2d 272, 283, 259 N.W.2d 48 (1977). The phrase "substantial factor" denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a

reasonable person, to regard it as a cause, using that word in the popular sense. *Milwaukee & Suburban Transport Corporation v. Royal Transit Co., Inc.,* 29 Wis.2d 620, 628, 139 N.W.2d 595 (1966); *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 236, 55 N.W.2d 29 (1952); Restatement, Second, *Torts* sec. 431, Comment *a.* p. 429 (1965). There may be more than one substantial causative factor in any given case. *Hart v. State,* 75 Wis.2d 371, 397, 249 N.W.2d 810 (1977).

Causation is a fact; the existence of causation frequently is an inference to be drawn from the circumstances by the trier of fact. *Jagmin v. Simonds Abrasive Co.,* 61 Wis.2d 60, 82, 211 N.W.2d 810 (1973). The question on appeal is whether the evidence is sufficient to support the finding of causation made by the trier of fact. We have often stated the test as follows: "A trial court's finding of fact made on conflicting evidence should not be set aside if a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached [the] conclusion [of the court below]." *Precision Service Co. v. Schill,* 60 Wis.2d 346, 348, 210 N.W.2d 706 (1973).

In this case we hold that the evidence was insufficient to support the inference that Commercial's negligence was a substantial factor causing the loss suffered by Merco. There is nothing in the record to indicate either when the burglary occurred or when the phone lines were repaired. The trier of fact might conclude that had Commercial followed its usual procedure and notified a Merco employee when Commercial failed to receive a closing signal, a Merco employee might have been on the premises at the appropriate time to thwart the burglary. The burglars might have been dissuaded from attempting to enter or might have been apprehended in the act. Under this supposition, Commercial's negligence was a substantial cause of the loss.

But from the evidence presented, the trier of fact could just as fairly conclude that, even if a Merco employee had been on the premises from soon after the time Commercial notified Merco until the phone lines were repaired, the burglary might have occurred anyway. The burglary could have taken place before the Merco employee arrived or after the employee left. The alarm would not have sounded because the door had been rewired. In this equally possible situation, Commercial's negligence would have no causal connection to the loss.

The cause of Merco's loss could be attributed to a condition to which no liability attaches or to one for which liability does attach. Because there is no credible evidence upon which the trier of fact can base a reasoned choice between the two possible inferences, any finding of causation would be in the realm of speculation and conjecture. *Rodenkirch v. Johnson*, 9 Wis.2d 245, 248, 101 N.W.2d 83 (1960). "Speculation and conjecture apply to a choice between liability and nonliability when there is no reasonable basis in the evidence upon which a choice of liability can be made." *Luke v. Northwestern National Casualty Co.*, 31 Wis.2d 530, 536, 143 N.W.2d 482 (1966), quoted in *United States Fidelity & Guaranty Co. v. Frantl Industries, Inc.*, 72 Wis.2d 478, 489, 241 N.W.2d 421 (1976). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Prosser, *Law of Torts* 241 (4th ed. 1971).

Merco failed to remove the issue of causation from the realm of speculation by establishing facts affording a logical basis for the inference which it claims, namely

that the loss occurred Commercial failed to notify Merco that because the alarm system was not functioning. Compare *Better Food Markets v. Am. Dt. Teleg. Co.,* 40 Cal.2d 179, 253 P.2d 10 (1953), where the evidence relating to the time of the burglary and the time required for the police to arrive after being notified was such that there was substantial evidence from which the jury could find plaintiff's loss was a proximate result of the alarm company's negligence.

Because it is impermissible to base a judgment on "conjecture, unproved assumptions, or mere possibilities," *Schwalbach v. Antigo Electric & Gas, Inc.,* 27 Wis. 2d 651, 655, 135 N.W.2d 263 (1965), we conclude that the judgment of the trial court cannot stand.

*By the Court.*—Judgment reversed, and cause remanded with directions to the trial court to enter judgment in favor of Commercial Police Alarm Company, Inc. dismissing Merco Distributing Corporation's complaint.