TELE-PORT, INC., a Wisconsin corporation,
Plaintiff-Appellant,†

v.

AMERITECH MOBILE COMMUNICATIONS, INC., a Delaware corporation, Ameritech Mobile Communications of Wisconsin, Inc., a Wisconsin corporation, Milwaukee SMSA Limited Partnership, a Delaware Limited Partnership, and Car Phones +, Inc., a Wisconsin corporation, Defendants-Respondents.

Court of Appeals

*No. 00–2627. Submitted on briefs September 4, 2001.—Decided October 9, 2001.*

2001 WI App 261

(Also reported in 637 N.W.2d 782.)

† Petition to review denied 1-29-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert B. Corris, S.C.* of *Robert B. Corris, S.C.*, Milwaukee; *Bruce A. Ranta* of *Cunningham & Lyons, S.C.*, Milwaukee; and *Edward T. Joyce* and *Rowena T. Parma* of *Edward T. Joyce & Associates, P.C.*, Chicago, Illinois.

On behalf of the defendant-respondent, Car Phones +, Inc., the cause was submitted on the brief of *John Theiler Bode* of *Bode, Carroll, McCoy, Hoefle & Mihal, S.C.*, Waukesha.

On behalf of the defendant-respondent, Ameritech Mobile Communications, Inc., the cause was submitted on the brief of *Jon P. Christiansen* and *Cynthia J. Franecki* of *Foley & Lardner*, Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. Tele-Port, Inc., appeals from a judgment dismissing its claims against Ameritech Mobile Communications, Inc., and Car Phones+, Inc. We affirm.

¶ 2. Tele-Port is an Ameritech dealer for cellular telephone service. So is Car Phones+. The essence of Tele-Port's many claims against Ameritech is that Ameritech gave more market development funds to Car Phones+ than it did to Tele-Port. The market development funds about which Tele-Port complains were separate from and in addition to contributions that Ameritech made to its cellular-service dealers, the level of which was computed pursuant to formulae based on a dealer's Ameritech-business volume. These business-volume based contributions took the form of a coopera-

tive advertising fund, which was limited to advertising expenditures, and, starting in 1997, a Dealer Development Fund, which could be used for "special promotional activities" approved by Ameritech. According to Tele-Port, as phrased by its final amended complaint, Ameritech's payment of market development funds to Car Phones+ permitted Car Phones+ "to flood the competitive area with advertising, open new locations, and obtain a disproportionate share of the market."

¶ 3. The trial court decided this case on summary judgment. Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. WIS. STAT. RULE 802.08(2); *U.S. Oil Co. v. Midwest Auto Care Servs.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Of course, "summary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis. 2d 183, 189, 260 N.W.2d 241, 243 (1977). In order to survive summary judgment, however, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set[ting] forth specific facts," WIS. STAT. RULE 802.08(3), material to that element. *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290–292, 507 N.W.2d 136, 139 (Ct. App. 1993). Our review of a trial court's grant of summary judgment is *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). For ease of analysis, we will discuss in sequence each of the claims that Tele-Port pursues on this appeal.

851

### 1. *Fair Dealership Act claim.*

¶ 4. Tele-Port asserts that Ameritech's alleged preferential treatment of Car Phones+ violated provisions of Wisconsin's Fair Dealership Law, specifically WIS. STAT. §§ 135.03 and 135.04, by changing the competitive circumstances of Tele-Port's dealership agreement with Ameritech.[1] All claims under WIS. STAT. ch. 135 must be "commenced within one year after the cause of· action accrues or be barred." WIS. STAT. § 893.93(3). The trial court granted summary judgment to Ameritech on Tele-Port's chapter-135 claims because, among other

---

[1] WISCONSIN. STAT. § 135.03 provides:

**Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employe[e], may terminate, cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.

WISCONSIN. STAT. § 135.04 provides:

**Notice of termination or change in dealership.** Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice.

reasons, it determined that Tele-Port's lawsuit was commenced more than one year after these claims accrued. On our *de novo* review, we agree.

¶ 5. Tele-Port contends that Ameritech gave Car Phones+ preferential treatment starting in 1991. Tele-Port did not commence this action until September 29, 1998. Tele-Port's president, Gary Sennett, submitted an affidavit to the trial court averring that he did not learn of the arrangement between Ameritech and Car Phones+ that he argues violates the Fair Dealership Law until March of 1998. Tele-Port thus asserts that under the "discovery rule" first adopted by *Hansen v. A.H. Robins, Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983) ("tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first"), its Fair-Dealership-Law claims did not "accrue" until that date. Ameritech, on the other hand, argues that the discovery rule does not apply to chapter-135 actions, and, in any event, Tele-Port either knew or in the exercise of reasonable diligence should have known that Ameritech was giving the funds to Car Phones+ well prior to one year before September 29, 1998. We agree with this latter contention, and, accordingly, do not discuss whether the "discovery rule" applies to claims under the Fair Dealership Law. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

¶ 6. Ameritech disputes Sennett's contention that the earliest he knew that Ameritech was giving market development funds to Car Phones+ was in March of 1998. But this dispute is immaterial because the issue is what Tele-Port either knew or in the exercise of reasonable diligence should have known and Tele-Port does not dispute with evidentiary material that the manager

853

of one of its stores knew about those funds more than one year before Tele-Port commenced this action.

¶ 7. Tele-Port is a corporation. "Notice" to a corporation can only be through its employees. Knowledge acquired by an employee of a corporation during his or her employment and concerning something pertinent to the subject matter of that employment, so that the employee therefore becomes an "agent" of the employer for the purposes of that information, is notice to the corporation for statute-of-limitations purposes, irrespective of whether the employee communicates that knowledge to anyone else in the corporation. 3 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 793 (rev. perm. ed. 1994) (notice to agent is imputed to principal "if the matter" about which notice is given "is relevant or pertinent to the subject matter of the agency" or employment); *see also Suburban Motors of Grafton, Inc. v. Forester*, 134 Wis. 2d 183, 192–193, 396 N.W.2d 351, 355 (Ct. App. 1986) (" 'corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation' ") (quoting 3 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 790 (rev. perm. ed. 1975)).

¶ 8. The undisputed evidence in the record indicates that Eugene Rosenberg managed Tele-Port's store in Mequon for several years, but no later than 1996. His brother, Gary Rosenberg, handled advertising for Car Phones+, and, indeed, put together many of Car Phones+'s proposals for market development funds from Ameritech. Gary Rosenberg testified at his depo-

sition that when his brother was the Mequon store manager, Gary Rosenberg told his brother that he was getting significant promotion funds from Ameritech for Car Phones+ in addition to the cooperative-advertising formula-based contributions that Ameritech was giving to each dealer, and suggested that Tele-Port also seek that money. Tele-Port contends, however, as phrased by Sennett's affidavit, that "Eugene Rosenberg had no authority whatsoever relating the [sic] subject matter of the communication that Gary Rosenberg described in his deposition." This contention is off the mark.

¶ 9. The issue here is not whether Eugene Rosenberg could have either personally sought promotion funds from Ameritech on Tele-Port's behalf or personally designed and implemented promotions with those funds, but whether he had the corporate interest and opportunity to both appreciate the significance of the information and pass it on to those who could pursue it further. Tele-Port does not dispute that Eugene Rosenberg's authority and corporate interest (as opposed to those whose employment responsibilities are unrelated to the substance of a company's business—maintenance personnel, for example) encompassed helping Tele-Port remain as competitive as possible *vis-à-vis* not only Car Phones+ but also other cellular-service sellers. Thus, Eugene Rosenberg not only learned during his employment by Tele-Port that Car Phones+ was receiving promotion funds from Ameritech that exceeded and were different than the normal cooperative-advertising allotments, but it was also within his authority to act on that information—that is, to tell Sennett that there was a way to seek extra funds from Ameritech.

¶ 10. Significantly, Tele-Port also received market development funds from Ameritech. In 1996, when Ameritech wanted a presence on Bluemound Road, it gave $7,300 to Tele-Port to help Tele-Port open a store there. This money was unrelated to cooperative-advertising funds, and was paid before Ameritech instituted the Dealer Development Fund program. Sennett testified at his deposition that he knew that the $7,300 was in addition to the "co-op money that one earns" under the dealership contract, and conceded that "for lack of a better term I suppose I could use MDF, but I don't know that that's the case." "MDF" is the acronym that Tele-Port uses for "market development funds."[2]

---

[2] At another point in Sennett's deposition, there is this confusing colloquy between Sennett and Ameritech's lawyer:

Q. And what you're saying is you didn't get what you believed to be your fair share of the available funds?

A. I'm not aware I received any.

Q. Okay. So you would agree with me then that you didn't get — What you're complaining about is not getting your fair share of the available funds?

A. Yes.

Although Tele-Port argues on appeal that the $7,300 was not the same as the market development funds it complains were given to Car Phones+ without Tele-Port's knowledge, it points to no evidentiary material in the record supporting that argument. The undisputed evidence is that both the $7,300 given to Tele-Port and the market development funds given to Car Phones+ were different from and more than what both Tele-Port and Car Phones+ were contractually entitled to.

In its reply brief, Tele-Port sets out the following table, drawn from a document prepared by Gary Rosenberg in 1994, to show that the $7,300 were not market development funds but, rather, "grand opening" funds:

¶ 11. Tele-Port was also aware that Car Phones+ was, as asserted in Tele-Port's final amended complaint, "flood[ing] the competitive area with advertising" and was "open[ing] new locations." As a matter of law, Tele-Port's obvious concern about Car Phones+'s significant success in the market, combined with what Gary Rosenberg told his brother and Tele-Port's own receipt of money apart from the cooperative advertising funds, gave Tele-Port sufficient information to trigger the required inquiry so that it would have, in the exercise of reasonable diligence, discovered more than one year before it commenced this action the availability of market development funds from Ameritech. *See Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 319, 340, 565 N.W.2d 94, 105 (1997) ("Plaintiffs may not ignore means of information reasonably available to them, but must in good faith apply their attention to those particulars which may be inferred to be within their reach.") (recognizing "duty to inquire") (affirming trial courts'

Car Phones–1993 MDF Funds

| | |
|---|---|
| Market Development Funds (MDF) | $25,000.00 |
| Local Event Funds (LE) | $ 2,000.00 |
| Yellow Pages (YP) | $ 6,000.00 |
| Grand Opening Funds (GO) | $18,000.00 |
| X-mas Funds | $ 4,000.00 |
| | $55,000.00 |

In its main brief on this appeal, Tele-Port characterizes the entire $55,000 as market development funds, a characterization that is consistent with the heading of Rosenberg's chart. Insofar as the chart differs from Tele-Port's contention in its brief-in-chief, we do not consider it because it is raised for the first time in its reply brief. *Sisters of St. Mary v. AAER Sprayed Insulation*, 151 Wis. 2d 708, 723–724 n.4, 445 N.W.2d 723, 729 n.4 (Ct. App. 1989) (appellate court will not review issue raised for first time in reply brief).

grants of summary judgment that plaintiffs' claims were barred by the statute of limitations).[3] Accordingly, Tele-Port's Fair Dealership claim is barred by the applicable one-year statute of limitations.[4]

*2. Duty of good faith and fair dealing.*

¶ 12. Tele-Port's contract with Ameritech is governed by Illinois law. As in Wisconsin, Illinois applies clear contract language as it is written. *Continental Mobile Tel. Co. v. Chicago SMSA Ltd. P'ship*, 587 N.E.2d 1169, 1173 (Ill. App. Ct. 1992) ("when the contract terms are clear and unambiguous, the intent of the parties must be discerned only from the language

---

[3] The duty to inquire is a basic tenet of our law, and applies when a plaintiff seeks relief for an alleged injury that in the exercise of reasonable diligence he or she should have discovered earlier. *See Melms v. Pabst Brewing Co.*, 93 Wis. 153, 174, 66 N.W. 518, 524 (1896) ("Where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such to put a man of ordinary prudence upon inquiry."). Here, of course, as already noted, the issue is the knowledge of *Tele-Port,* which is the plaintiff in this action, and not Sennett.

[4] We thus do not decide whether the knowledge of a person who did advertising for Tele-Port between 1993 and 1995 but who was never employed by Tele-Port is notice to Tele-Port. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground"). We also do not consider whether Ameritech is estopped from asserting a statute-of-limitations defense because Tele-Port raises that issue for the first time in its reply brief. *See Sisters of St. Mary*, 151 Wis. 2d at 723–724 n.4, 445 N.W.2d at 729 n.4.

used in the contract itself"). Although "[i]n Illinois, as in the majority of American jurisdictions, a covenant of good faith and fair dealing is implied in every contract absent express disavowal," *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 971 (Ill. App. Ct. 1984), the concepts of "good faith" and "fair dealing" may not be used to modify the contractual obligations of the parties, *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995) (applying Illinois law).

■

¶ 13. Tele-Port claims that Ameritech breached its duty of good faith and fair dealing by implementing an alleged "discriminatory non-system wide market development fund payments to Car Phones+ and not to any other Ameritech dealers in the Wisconsin market." But Tele-Port points to no clause in any of its Ameritech contracts that prevents Ameritech from giving market development funds to any of its dealers. Indeed, Tele-Port does not dispute that its contracts with Ameritech not only give Ameritech the unrestricted right to sell its products and services through other dealers who are Tele-Port's competitors, but also to market those products and services by itself—through its own outlets and by its own employees. This is dispositive of Tele-Port's contention that Ameritech breached its duty of good faith and fair dealing by giving to Car Phones+ more promotion-type funds than what was available *via* the cooperative advertising allowances. *See Metro Communications Co. v. Ameritech Mobile Communications, Inc.*, 788 F. Supp. 1424, 1431 (E.D. Mich. 1992) (applying Illinois law).

¶ 14. *Metro Communications* concerned dealership contracts that, similar to those here, gave to Ameritech the unfettered right to compete with Metro Communications, either through other dealers or by

itself. *Id.*, 788 F. Supp. at 1431. *Metro Communications* rejected Metro Communications's argument that the doctrine of good faith and fair dealing prevented Ameritech from treating some of its dealers differently than it treated others because the free-compete clause negated any expectation that Ameritech could not treat some of its dealers differently than others:

> This clause contains no limitation on the manner in which [Ameritech] could compete with Plaintiffs. Therefore, the possibility that [Ameritech] would offer more favorable terms to Plaintiffs' competitors was, or should have been, part of the parties' reasonable expectations. As such, there is no violation of the implied covenant of good faith.

*Id.*, 788 F. Supp. at 1432. *See also Patel v. Dunkin' Donuts of Am., Inc.*, 496 N.E.2d 1159 (Ill. App. Ct. 1986) (contractual grant to franchisor to "in its sole discretion . . . operate or franchise" other shops negated any claim of franchisee that opening of a competing shop within one mile of franchisee breached the franchiser's duty of good faith and fair dealing). Tele-Port's arguments based on the doctrine of good faith and fair dealing under Illinois law are without merit.

### 3. *Unfair trade practices.*

¶ 15. Tele-Port also contends that Ameritech's giving market development funds to Car Phones+ violated the "secret . . . unearned discounts" prohibition of WIS. STAT. § 133.05(1). This section provides:

> The secret payment or allowance of rebates, refunds, commissions or unearned discounts, whether in the form of money or otherwise, or the secret extension to certain purchasers of special services or privileges not extended to all purchasers purchasing upon like

860

terms and conditions, such payment, allowance or extension injuring or tending to injure a competitor or destroying or tending to destroy competition, is an unfair trade practice and is prohibited.[5]

¶ 16. Wis. Stat. § 133.05(1) prohibits two types of preferences: (1) secret "rebates, refunds, commissions or unearned discounts"; and (2) secret "special services or privileges not extended to all purchasers purchasing upon like terms and conditions." Tele-Port does not contend that Ameritech violated the "special services or privileges" component, and, therefore, we do not discuss it. *See Reiman Assocs. v. R/A Adver. Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (matter not briefed or argued is waived).

¶ 17. Resolution of what Wis. Stat. § 133.05(1) prohibits requires us to apply the legislature's language. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). The words "rebates, refunds, commissions or . . . discounts" are not defined in the statute, and, therefore, we may look to a recognized dictionary. *Jauquet Lumber Co. v. Kolbe & Kolbe Millwork Co.*, 164 Wis. 2d 689, 698, 476 N.W.2d 305, 308 (Ct. App. 1991). Black's Law Dictionary defines the words as follows:

---

[5] The parties differ on whether Tele-Port, as a conduit for its customers to get Ameritech cellular services, is a "purchaser." (There is also a question, albeit not disputed on this appeal by the parties, whether the word "purchaser" modifies the proscription on the "secret payment or allowance of rebates, refunds, commissions or unearned discounts" as well as the ban on secret "special services or privileges"). Resolution of these matters, however, is immaterial in this case, and, accordingly, we do not address them. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

rebate: "A return of part of a payment, serving as a discount or reduction";

refund: "The return of money to a person who over-paid";

commission: "A fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction <a real-estate agent's commission>";

and, finally, what Tele-Port complains of,

discount: "A reduction from the full amount or value of something, esp. a price."

BLACK'S LAW DICTIONARY 1273, 1285, 264, 477 (7th ed. 1999). As we see, the words "rebates," "refunds," and "discounts" mean essentially the same thing—a reduction or credit that is tied to the price of the good or service being purchased by the recipient of the reduction or credit. An "earned" discount is a "reasonable" reduction from a price to compensate the person receiving the discount for performing "a service" that is both: (1) something that would "ordinarily be performed by" the person giving the discount; and (2) something that would be performed at the "request" of the person giving the discount. *Jauquet Lumber*, 164 Wis. 2d at 701–702, 476 N.W.2d at 309. But, to be a "discount" the "payment or allowance" must be a reduction from the price that would be paid if the "discount" were not given. This is consistent with the maxim of statutory construction *noscitur a sociis*—"that a word 'is known from its associates' so that 'ordinarily the coupling of words denotes an intention that they should be understood in the same general sense.'" *State v. Johnson*, 171 Wis. 2d 175, 181, 491 N.W.2d 110, 113 (Ct. App. 1992) (quoting 2A SUTHERLAND STAT CONST § 47.16 (5th ed. 1992)).

862

¶ 18. There is no evidence in the record that the market development funds were used as a disguised mechanism to cloak the reduction of prices to either Car Phones+ or its customers for Ameritech equipment or services. Indeed, Sennett testified during his deposition that he did not "know one way or another" if there were "lower prices for equipment charged in the marketplace by any of [Tele-Port's] competitors by reason of the payment of any market development funds to the competitor by Ameritech." Accordingly, Teleport has not submitted evidentiary material raising a genuine issue of fact as to whether the market development funds were "discounts" so that Ameritech's payment of market development funds violated Wis. Stat. § 133.05(1) as Tele-Port contends.

4. *Conspiracy.*

¶ 19. Finally, Tele-Port argues that Ameritech and Car Phones+ engaged in a civil conspiracy to violate Wis. Stat. § 133.05(1). A civil conspiracy in Wisconsin is " 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977) (quoted source omitted). We have already determined that Ameritech did not violate § 133.05(1) as Tele-Port contends. Additionally, Tele-Port has not alleged that Car Phones+ did anything "to accomplish by unlawful means some purpose not in itself unlawful." Accordingly, Tele-Port's civil conspiracy claim is also without merit.

*By the Court.*—Judgment affirmed.