Mary A. ZIELINSKI and Georgianna Meyer, as Special Administrator, Estate of George F. Zielinski, Deceased, Plaintiffs-Appellants,

v.

A.P. GREEN INDUSTRIES, INC., Defendant,

POWERS HOLDINGS, INC., and Firebrick Engineers, Inc., Defendants-Respondents,†

MILWAUKEE CHAPLET & MFG. CO., INC., Defendant.

Court of Appeals

*No. 02–1888. Submitted on briefs February 4, 2003.—Decided March 18, 2003.*

2003 WI App 85

(Also reported in 661 N.W.2d 491.)

† Petition to review denied 6-12-03.

 █

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Ronald G. Tays* of *Law Office of Ronald G. Tays*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eric D. Carlson* of *Crivello, Carlson & Mentkowski, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. The plaintiffs, Mary A. Zielinski and her daughter, Georgianna Meyer, as the special administrator of the estate of George F. Zielinski (Estate), appeal from the trial court's order granting summary judgment and dismissing their negligence and products liability claims against Firebrick Engineers, Inc. and Powers Holdings, Inc. (Firebrick).[1] The plaintiffs contend: (1) they produced sufficient evidence to establish a genuine issue of material fact as to whether Firebrick sold or supplied asbestos-containing products to the Ladish Company; and (2) they produced sufficient evidence to establish a genuine issue of material fact as to whether George Zielinski, their husband and father, was exposed to asbestos-containing products supplied by Firebrick during the course of his employment at Ladish. Because evidence in the record creates

---

[1] Powers Holding, Inc., is a successor to Firebrick Engineers, Inc. The parties, including defendants-respondents, use the names of the companies interchangeably. Therefore, we assume that no issues regarding successor liability are present.

a genuine issue of material fact with respect to each of these issues, we conclude that summary judgment was inappropriate. Accordingly, the order granting summary judgment to Firebrick is reversed and the cause is remanded.

## I. BACKGROUND.

¶ 2. George Zielinski was employed at the Ladish Company from 1947 to 1951, from 1953 to 1954, and from 1957 to 1963, during which Ladish was an industrial metal works foundry, which primarily manufactured metal components through casting and forging. Zielinski began his work at Ladish as a mason's helper, and after an apprenticeship, became a mason. His main duties included the maintenance and repair of foundry furnaces. As part of this work, Zielinski would tear out old refractory and insulating materials from the foundry furnaces and rebuild the furnaces with new materials.[2] Ladish operated over 200 furnaces during the times of Zielinski's employment. Therefore, these furnaces were in constant need of repair and replacement of the refractory and insulating materials. It is alleged by the plaintiffs that many of the materials used by Zielinski in this process contained asbestos.

---

[2] A refractory material is capable of resisting high temperatures. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY, 1909 (1983). These refractory materials are used to line the melting furnaces; the insulation materials are then used to reduce heat loss and keep the furnaces operating at optimum efficiency. *See* http://www.industrialheating.com. Because one of the most common maintenance problems encountered in any given foundry is the repair and replacement of the refractory and insulation materials used to line the furnaces, quick repair and replacement of these materials is a key element in maintaining adequate productivity in foundry operations and reducing furnace downtime. *See id.*

¶ 3. On approximately April 15, 1999, Zielinski was diagnosed with mesothelioma.[3] He died a month after the diagnosis, on May 14, 1999. On May 11, 1999, Zielinski and his wife, Mary, had filed an action against various asbestos suppliers and manufacturers. On June 6, 2001, however, that lawsuit was dismissed. On June 26, 2001, Mary Zielinski and her daughter, Georgianna Meyer, as the special administrator of her father's estate, filed a second lawsuit naming four defendants, including Firebrick. The defendants moved for summary judgment.

¶ 4. With respect to Firebrick, the trial court found the evidence insufficient to establish that Firebrick sold or supplied any asbestos-containing products to Ladish. Additionally, the trial court found the evidence insufficient to establish that Zielinski had been exposed to any asbestos-containing products supplied by Firebrick. On April 19, 2002, the trial court granted summary judgment and dismissed all claims against each of the defendants. The plaintiffs only appeal from the trial court's dismissal of Firebrick.

## II. ANALYSIS.

¶ 5. This appeal involves issues decided pursuant to summary judgment. We review a trial court's grant of summary judgment *de novo,* owing no deference to the trial court's decision. *Deminsky v. Arlington Plastics Mach.,* 2001 WI App 287, ¶ 8, 249 Wis. 2d 441, 638 N.W.2d 331, *cert. granted,* 2002 WI 23, 250 Wis. 2d 555, 643 N.W.2d 93, *aff'd,* 2003 WI 15, 259 Wis. 2d 587, 657

---

[3] Mesothelioma is a cancer resulting from over-exposure to asbestos-related products.
*See* http://www.mesoinfo.com/about/mesothelioma.html.

N.W.2d 411. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995). Thus, we will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *See Deminsky*, 2001 WI App 287 at ¶ 9.

¶ 6. Our summary judgment methodology is often repeated. We must first determine whether the complaint states a claim. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If the plaintiff has stated a claim and the pleadings show the existence of factual issues, then we must examine whether the moving party has presented a defense that would defeat the claim. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If the defendant has made a prima facie case for summary judgment, the court examines the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to determine whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from undisputed facts, therefore requiring a trial. *Green Spring Farms*, 136 Wis. 2d at 315. Thus, summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. Rule 802.08(2) (2001–02).

300

¶ 7. In determining whether material facts are at issue, we must ask whether "only one reasonable inference may be drawn from the undisputed facts." *Groom v. Profls Ins. Co.*, 179 Wis. 2d 241, 249, 507 N.W.2d 121 (Ct. App. 1993). If so, "the drawing of that inference is a question of law, and an appellate court may draw it." *Id.* However, if review of the record reveals that disputed material facts exist or undisputed material facts exist from which reasonable alternative inferences may be drawn, then summary judgment is inappropriate. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980).

¶ 8. There are five conditions necessary to recovery under strict products liability:

> (1) that the product was in defective condition when it *left the possession or control of the seller,* (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the *seller engaged in the business of selling such product* or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

*Cook v. Gran-Aire, Inc.*, 182 Wis. 2d 330, 335, 513 N.W.2d 652 (Ct. App. 1994) (emphasis in original) (citing *Dippel v. Sciano*, 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967)).

¶ 9. In the instant case, Firebrick argues: "The plaintiffs . . . have presented no evidence that [Fire-

301

brick] sold or distributed asbestos-containing products to Ladish Company." Therefore, they challenge parts of the first and fifth requirements of a strict products liability claim, i.e., that their products "left the possession or control of the seller" and "did reach the user or consumer." However, Dean Beaumont, who worked at Ladish for twenty-seven years as the lead man on the first shift and later as a supervisor for the masons and masons' helpers, and Matthew Bridich, an engineer, rebut Firebrick's first challenge. Beaumont stated in a deposition taken on April 3, 2001:

Q: You brought with you some documents today . . . . Some of those documents look like vendor lists, approved materials from Ladish; is that right?

A: Right.

Q: Did you take those with you when you left Ladish or did you get them later?

A: Before.

 . . . .

Q: And why did you have those when you left Ladish?

A: For my own personal use.

Q: What personal use is that?

A: I could come down with something.

Q: So in case you developed a disease, you wanted to know what products were there?

A: Yes.

 . . . .

Q: . . . . And what I want to find out is if there are any products that aren't on this list that you can recall using at Ladish. Is there any way for you to do that?

A: No.

Q: So the best source of what products could have been used at Ladish, to your knowledge, is what's . . . in the list; right?

A: Yes.

Q: And just because a product is in this list doesn't mean it was used there; right?

A: Yes.

Q: These are products that someone could purchase to use there; right?

¶ 10. The vendor lists referred to by Beaumont make two specific references to products available to Ladish from Firebrick. The "1955 MASTER" vendor list states:

| Manufacturer | Brand Name | Vendor |
|---|---|---|
| . . . . | | |
| 5. Weber | Weber "48" | Firebrick Engineers |

And the "1958 MASTER" vendor list states:

| Manufacturer | Brand Name | Vendor |
|---|---|---|
| . . . . | | |
| 3. Forty-Eight Insulations | Weber 48 | Firebrick Engineers Corp. |

¶ 11. Matthew Bridich, who worked as an engineer at Ladish from 1953 to 1992, also gave deposition testimony regarding the vendor lists:

Q: Now, these lists, vendor lists, approved lists, are meant to contain all the materials approved for use in the furnaces at Ladish; is that right?

303

A: That's correct.

Q: So if you needed to purchase something, you would go to that list and look to see, here are "X" number of types of block insulation we can purchase, and try to get what's available, the right price, et cetera, I would assume; right?

A: That is correct.

Q: So purchasing knew what products they could order?

A: That's correct. And we're speaking specifically about masonry materials now . . . .

. . . .

Q: The products that a mason's helper at Ladish would be using, those products, brand names or manu-facturers, would be found in these lists here; right?

A: That is correct.

Q: They wouldn't be using products that aren't in these lists; right?

A: They would not. I am hung up on the word "using."

Q: Working with?

A: Yes

Q: Installing?

A: Mason helpers might start out just on rip-out, teardown.

Q: But these are mason type of products?

A: That is correct.

¶ 12. Finally, while going over the vendor lists, Beaumont also stated that Ladish had probably pur-chased Weber 48:

304

Q: "Forty Eight Insulation Corporation"?

A: Yes, right, that's another one.

Q: You got block insulation from them?

A: Yeah, sure.

Q: And you have "Weber 48"?

A: Yeah.

Q: What's Weber 48?

A: Weber 48 rings a bell now. We probably bought it –
That was their listing for the block we bought from
them that said Weber 48 on the box or the bag . . . .

¶ 13. Thus, we conclude that the plaintiffs have presented evidence, through the vendor lists and the deposition testimony of Beaumont and Bridich, that creates a genuine issue of material fact as to whether Firebrick sold or supplied asbestos-containing products, namely Weber 48, an insulating block and cement, to the Ladish Company.

¶ 14. Alternatively, Firebrick argues that the plaintiffs failed to "prove" that their product was a substantial factor in producing Zielinski's injury. In support of this conclusion, Firebrick claims: "There has been no testimony that George Zielinski worked with or around a product [d]istributed or sold by [Firebrick]. A [p]laintiff must show he or she was exposed to defendant's asbestos-containing product by working with the product or by working in proximity to worker's using that product."

¶ 15. Firebrick misstates the plaintiffs' burden. "[T]he inquiry on summary judgment is not to decide the questions of fact raised by the affidavits and other

305

proof, but to decide whether such questions exist and should be submitted to the trier of the facts." *Frewe v. Dupons Const. Co.*, 37 Wis. 2d 676, 681, 155 N.W.2d 595 (1968). Accordingly, "[w]e have often said that the power of the courts under the summary-judgment statute . . . is drastic and should be exercised only when it is plain that there is no substantial issue of fact or of permissible inference from undisputed facts to be tried." *Id.* at 681–82.

¶ 16. With respect to causation and summary judgment, our supreme court has held:

> The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in contributing to the result. The phrase "substantial factor" denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense.
>
> Causation is a fact; the existence of causation frequently is an inference to be drawn from the circumstances by the trier of fact.
>
> . . . .
>
> [If] there is no credible evidence upon which the trier of fact can base a reasoned choice between . . . two possible inferences, any finding of causation would be in the realm of speculation and conjecture. "Speculation and conjecture apply to a choice between liability and nonliability when there is no reasonable basis in the evidence upon which a choice of liability can be made." "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

*Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84

Wis. 2d 455, 458–59, 460, 267 N.W.2d 652 (1978) (citations omitted). Therefore, we must decide whether Zielinski's exposure to Firebrick's products while working at Ladish is a mere possibility, or whether the plaintiffs presented credible evidence from which a reasonable person could infer that Zielinski was exposed to Firebrick's products. We conclude that there was evidence from which causation could have been reasonably inferred.

¶ 17. The widespread use of asbestos products and the debilitating effects of asbestos-related diseases have resulted in a flood of litigation in courts throughout the nation. *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985). Faced with such a problem, a number of jurisdictions have established a bright-line test regarding causation in asbestos litigation. *See, e.g., Odum v. Celotex Corp.*, 764 F.2d 1486, 1488 (11th Cir. 1985) ("Testimony of co-workers who can identify a plaintiff by name as having worked with or around a particular defendant's asbestos-containing products is substantial evidence of exposure in asbestos cases."); *Blackston*, 764 F.2d at 1481–82 (11th Cir. 1985) (stating proof that a particular defendant's asbestos-containing product was used at the job site and that the plaintiff was in proximity to that product at the time it was being used is sufficient to establish causation); *Migues v. Fibreboard Corp.*, 662 F.2d 1182, 1185 (5th Cir. 1981) (stating that testimony of co-workers who can identify a plaintiff by name as having worked with or around a particular defendant's asbestos-containing products is substantial evidence of causation).

¶ 18. Generally, courts have taken one of two approaches in deciding asbestos-related causation is-

sues: (1) making broad pronouncements of law in an attempt to simplify the causation issue as in the above-cited cases; or (2) narrowly deciding each case on the facts presented within the causation framework already in place. While we find these bright-line tests useful in establishing important factors to be considered within our pre-existing causation framework, we decline to adopt a bright-line rule regarding causation for fear of over-simplifying such a complex issue. In the instant case, we decide the issue of causation based on the totality of the circumstances surrounding the work of masons at Ladish and the products they generally used. Thus, we must determine whether Firebrick's product may have been a substantial factor in contributing to Zielinski's injuries, i.e., that the defendant's product had such an effect in producing the harm as to lead a reasonable person to regard it as a cause. *See Merco*, 84 Wis. 2d at 458–59.

¶ 19. Robert Delbovo, who worked as a mason at Ladish from 1948 to 1991, gave the following deposition testimony:

Q: Did you know George Zielinski?

A: Yes.

. . . .

Q: [T]here's a time period where you and Mr. Zielinski worked on second shift?

A: Oh, sure. Yeah.

Q: Do you know how long that was?

A: Geez, I don't know; maybe about four or five years.

. . . .

Q: . . . . Now at least as I understand it, there are two different types of masons at Ladish. There were refractory masons and the masons that did the more non-refractory work?

A: No, no. Masons were masons, and we all did the same work.

. . . .

Q: And the masons were doing the refractory work on the furnaces, right?

A: We did the refractory work, we did mason work. As far as laying cement, we helped with the cement. We built buildings with cement blocks; we laid brick.

. . . .

Q: And did Mr. Zielinski do both of those type of jobs?

A: Yeah, he did that.

¶ 20. The plaintiffs have already established, in the words of Beaumont, that Ladish "probably bought" Weber 48 from Firebrick. Drawing the inference most favorable to the plaintiffs from Delbovo's deposition testimony, we also conclude that a fact-finder might infer that Zielinski used this product in his work as a mason at Ladish. Thus, we conclude: (1) the plaintiffs have presented evidence that creates a genuine issue of material fact as to whether Firebrick sold or supplied asbestos-containing products, namely Weber 48, to Ladish; and (2) the plaintiffs have presented evidence that creates a genuine issue of material fact as to whether Zielinski was exposed to asbestos containing products supplied by Firebrick during the course of his employment at Ladish.

¶ 21. Based upon the foregoing reasons, the order granting summary judgment to Firebrick is reversed and the cause is remanded.

*By the Court.*—Order reversed and cause remanded.