Cindy HORAK, Individually and as
Special Administrator on behalf of
the Estate of George Benzinger,
Plaintiff-Appellant,

v.

BUILDING SERVICES INDUSTRIAL SALES COMPANY,
Defendant-Respondent,

AMERICAN STANDARD, INC., Bay Industries, Inc.,
Bay Insulation Systems, Inc., Cleaver Brooks,
Inc., International Paper Company, General
Electric Company, Georgia Pacific Corporation,
Owens Illinois, Inc., L S Insulation Company,
Inc., Metropolitan Life Insurance Company,
Metso Paper USA, Inc., Oakfabco, Inc., Rapid
American Corporation, Viacom, Inc., Wausau
Paper Corp. and Taylor Insulation Company, Inc.,
Defendants,

MEDICARE, Subrogated Defendant.

Court of Appeals

No. 2007AP735. *Submitted on briefs January 31, 2008.
—Decided February 20, 2008.*

2008 WI App 56

(Also reported in 750 N.W.2d 512.)

On behalf of the appellant, the cause was submitted on the briefs of *Robert G. McCoy* and *Jacqueline J. Herring* of *Cascino Vaughan Law Offices*, Chicago, Illinois.

On behalf of the respondent, the cause was submitted on the brief of *John J. Laffey* and *Thomas Gonzalez* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

Before Brown, C.J., Wedemeyer and Fine, JJ.

¶ 1. FINE, J. Cindy Horak, individually and as the Special Administrator on behalf of the Estate of George Benzinger, appeals a summary-judgment order dismissing its complaint against Building Services Industrial Sales Company.[1] Horak is Benzinger's daughter. Benzinger died from lung cancer caused in part by his exposure to asbestos. Building Services supplied asbestos material to Benzinger's employer, Jaeger Insulation Company or its predecessor. The circuit court determined that Horak did not satisfy her summary-judgment burden to show that there were genuine

---

[1] The operative part of the order reads:

> The court being fully advised, **HEREBY ORDERS, ADJUDGES AND DECREES**: that [Building Services's] Motion for Summary Judgment is hereby **granted** dismissing defendant Building Services Industrial Sales Company, Inc., from the above-captioned matter on the merits, with prejudice and with costs awarded pursuant to statute; that, pursuant to this Order, defendant, Building Services Industrial Sales Company, is authorized to submit to this court for execution an Order for Judgment.

(Bolding and uppercasing in original.) Unless we grant a petition for leave to appeal a non-final judgment or order, this court only has jurisdiction over appeals from "[a] final judgment or a final order of a circuit court." Wis. Stat. § 808.03. A judgment or order is final if "the circuit court did not contemplate a subsequent document from which appeal could be taken." *Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶ 27, 299 Wis. 2d 723, 737, 728 N.W.2d 670, 678. The order here is ambiguous. On the one hand, it clearly says that it is "dismissing" Building Services from the case "on the merits, with prejudice." On the other hand, it appears to contemplate an additional document by saying that Building Services is "*authorized* to submit to this court for execution an Order for Judgment." (Emphasis added.) *Wambolt* enjoins that "appellate courts should liberally construe ambiguities to preserve the right of appeal." *Id.*, 2007 WI 35, ¶ 4, 299 Wis. 2d at 727, 728 N.W.2d at 673. We do so here.

issues of fact as to whether Building Services's supply of asbestos to Jaeger or its predecessor was a cause of Benzinger's cancer because, according to the circuit court, Horak was unable to show that Benzinger actually worked with Building Services's asbestos. As explained below, our review is *de novo*. We reverse and remand for trial.

## I.

¶ 2.   The parties agree that the foundation facts here are essentially not disputed. They disagree, however, whether those facts would support a reasonable jury's determination that Building Services's asbestos was a cause of Benzinger's lung cancer.

¶ 3.   As noted, Benzinger worked for Jaeger or its predecessor for many years, including 1961 through 1965. One of his surviving co-workers during part of that time testified at his deposition that three or four persons worked for Jaeger, noting that it was not "that big of a company." He could, however, only remember two—Benzinger and another, both of whom were deceased. Jaeger went out of business, apparently in the late 1980s. There are no Jaeger business-documents in the Record. Benzinger died before he could either testify at a deposition or otherwise preserve whatever evidence he might have had material to this case.

¶ 4.   Building Services did, however, have some records of its sales of asbestos to Jaeger or its predecessor from 1961 through 1965, and the focus of Horak's claim here is thus on those years. Distilling those records, Horak represents that Building Services sold to Jaeger or its predecessor from 1961 through 1965:  "3.63 miles" of "asbestos pipe covering"; "5,859 feet of asbestos blocks (1,953 total blocks)"; and "4,750

191

pounds of asbestos cement." Horak asserts that more than "$7,500 total dollars (in early 1960s dollars) of asbestos containing products were purchased by Jaeger from [Building Services] during this 1961–1965 period." Other than complaining that it is "at a loss as to how to respond to" these summaries because, it claims, that Horak "broke the grammar school maxim: 'show your work,' " Building Services does not dispute the accuracy of Horak's summaries of Building Services's own records. We thus take those summaries as established for the purpose of the summary-judgment Record. *See* WIS. STAT. RULE 910.06 ("The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place."); *Case & Co. v. Board of Trade of Chicago*, 523 F.2d 355, 361 (7th Cir. 1975) (On summary judgment, the burden is on the party disputing the accuracy of a compilation "in the nature of a summary of voluminous evidence" under Rule 1006 of the Federal Rules of Evidence to show how the summary does not accurately reflect the underlying data when that party has access to the underlying data.); *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979) (matter not refuted deemed admitted).

¶ 5.   There is no dispute that Benzinger worked with asbestos for Jaeger or its predecessor during 1961 through 1965, and that installing asbestos insulation, which Benzinger did for Jaeger, released dust into the air. One of Benzinger's co-workers during part of that time, Benzinger's nephew, testified at his deposition what it was like:

■

Q    And you just described a minute ago insulating the Kewaunee boilers at the YMCA in 1963. When you were doing that kind of work with Shorty Benzinger [Horak's father] was that dusty work?

A    Very dusty.

Q    Where did that dust come from?

A    Everything is dusty. From the block [of asbestos]. I mean sawing it and drilling it, and a lot of times we took our knife but sometimes we had to drill with a big — for cutting for the wires to go through, we'd drill through it, and then it was very dusty. At night you'd change clothes, you'd take your clothes — you'd take it outside and just all over, yeah.

Q    Were the cements dusty as well?

A    Yes, when you're mixing it. Once it's mixed the dust would go away.

¶ 6.    There is evidence in the summary-judgment Record that several companies other than Building Services sold asbestos insulation to Jaeger, including Allied Insulation, which Benzinger's nephew testified was Jaeger's "main supplier." In response, Horak has attached Allied's 1969 articles of incorporation to her reply brief and asks us to take judicial notice of that document. *See* WIS. STAT. RULES 902.01(4) ("A judge or court shall take judicial notice if requested by a party and supplied with the necessary information."); 902.01(6) ("Judicial notice may be taken at any stage of the proceeding."); *Gupton v. City of Wauwatosa*, 9 Wis. 2d 217, 224d, 102 N.W.2d 401, 403 (1960) (per curiam) (taking judicial notice of articles of incorporation). We do so.

193

¶ 7.  In granting summary judgment to Building Services dismissing Horak's complaint against it, the circuit court recognized that Jaeger "had small jobs" where asbestos insulation was installed, but ruled that it could not "make a reasonable inference that [Benzinger] had contact with Building Services' product." It explained:  "There is no evidence to establish that any Building Service [*sic*] product ever went to a particular job site where [Benzinger] was."

## II.

■

¶ 8.  Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. WIS. STAT. RULE 802.08(2). Of course, "summary judgment is a drastic remedy and should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear." In order to survive summary judgment, however, the party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set[ting] forth specific facts," WIS. STAT. RULE 802.08(3), material to that element. Our review of a trial court's grant of summary judgment is *de novo.*

*Tele-Port, Inc. v. Ameritech Mobile Commcn's, Inc.*, 2001 WI App 261, ¶ 3, 248 Wis. 2d 846, 851, 637 N.W.2d 782, 785 (case citations omitted). We thus examine the Record to see if there are "specific facts" that Horak marshals to defeat summary judgment.

¶ 9. As we have noted, Horak focuses on her father's work for Jaeger or its predecessor from 1961 through 1965 because there is only evidence that Building Services sold asbestos to Jaeger or its predecessor during that five-year period. As the circuit court recognized, Jaeger "had small jobs," Building Services sold a significant amount of asbestos products to Jaeger or its predecessor during that time, and it is not disputed that Benzinger installed asbestos insulation on various Jaeger job-sites. Is this enough to pass summary-judgment muster? We believe that it is.

¶ 10. First, although there is no direct evidence that Jaeger or its predecessor used any of Building Services's asbestos on its jobs from 1961 through 1965, it is certainly a reasonable inference that they did; companies generally do not buy raw material unless they plan on using that raw material in their business. Second, given Jaeger's small size and the reasonable inference from the Record that Benzinger was one of Jaeger's few employees from 1961 through 1965, it would be reasonable for a jury to find that he used *some* Building Services asbestos during those years. *See Zielinski v. A.P. Green Indus., Inc.*, 2003 WI App 85, ¶¶ 9–13, 263 Wis. 2d 294, 301–305, 661 N.W.2d 491, 494–496.

¶ 11. *Zielinski* was an asbestos case where, like here, the circuit court granted summary judgment to an asbestos supplier. *Id.*, 2003 WI App 85, ¶ 4, 263 Wis. 2d at 299, 661 N.W.2d at 493. We reversed. *Id.*, 2003 WI App 85, ¶ 21, 263 Wis. 2d at 309, 661 N.W.2d at 498. *Zielinski* focuses our analysis.

¶ 12. Unlike here, there was no direct evidence in *Zielinski* that the supplier had sold asbestos to the plaintiff's employer. *Id.*, 2003 WI App 85, ¶¶ 9–13, 263

Wis. 2d at 301–305, 661 N.W.2d at 494–496. Nevertheless, we held that there was sufficient evidence from which a reasonable jury could find that the plaintiff's employer in *Zielinski* bought asbestos from the supplier because the supplier was on an approved-vendor list. *Ibid.* Here, of course, there is no dispute whether Building Services sold asbestos to Jaeger or its predecessor from 1961 through 1965; it did.

¶ 13. There is also no dispute whether Benzinger worked for Jaeger or its predecessor when those companies used asbestos supplied by Building Services and the other suppliers; he did.[2] Would this, as Horak argues, permit a reasonable jury to find, contrary to the circuit court's conclusion, that Benzinger used Building Services asbestos on the job? Here again *Zielinski* is instructive.

¶ 14. The argument made by the defendant in *Zielinski* mirrors Building Services's argument here:

> Alternatively, [the defendant] argues that the plaintiffs failed to "prove" that their product was a substantial factor in producing Zielinski's injury. In support of this conclusion, [the defendant] claims: "There has been no testimony that George Zielinski worked with or around a product [d]istributed or sold by [the defendant]. A [p]laintiff must show he or she was exposed to defendant's asbestos-containing product by working with the product or by working in proximity to worker's [*sic*] using that product."

*Id.*, 2003 WI App 85, ¶ 14, 263 Wis. 2d at 305, 661

---

[2] Although Building Services contends that Allied was, as testified to by Benzinger's nephew, Jaeger's "main supplier," a reasonable jury could conclude that Allied did not sell any asbestos to Jaeger or its predecessor from 1961 through 1965 because it appears that Allied was not then in business, or at least had not yet been incorporated.

N.W.2d at 496. We disagreed, noting that the summary-judgment Record in *Zielinski* established that:

- Zielinski did the *type* of work that used asbestos;

- Zielinski's employer " 'probably bought' " asbestos from the defendant; and, therefore,

- "a fact-finder might infer that Zielinski used this product in his work."

*Id.*, 2003 WI App 85, ¶¶ 19–20, 263 Wis. 2d at 308–309, 661 N.W.2d at 497–498. That is what we have here:

- From 1961 through 1965 Benzinger did the type of work for Jaeger or its predecessor that used asbestos;

- during that period Jaeger or its predecessor bought asbestos from Building Services; and, therefore,

- a reasonable jury could infer that Benzinger used Building Services's asbestos in his work.

¶ 15.  Although it is true that Benzinger might have used, and, on the odds most likely did use, asbestos sold to Jaeger or its predecessor by one or more other asbestos suppliers, Horak's burden at trial is not to prove that Building Services's asbestos was *the* cause of Benzinger's lung cancer; she only has to prove that it was *a* cause of her father's cancer. The following approved jury instruction reflects this:

> The cause questions ask whether there was a causal connection between the negligence of any person and the injuries. These questions do not ask about "the cause" but, rather, "a cause." The reason for this is that there may be more than one cause of an injury. The

197

negligence of one person may cause an injury, or the combined negligence of two or more persons may cause it. Before you find that any person's negligence was a cause of the injury, you must find that his negligence was a substantial factor in producing the injury.

*Jones v. Dane County*, 195 Wis. 2d 892, 925, 537 N.W.2d 74, 84 (Ct. App. 1995) ("This standard causation instruction could not be a more accurate statement of the law.").

¶ 16. Whether Horak can prove that her father's cancer was at least caused in part by his exposure to Building Services's asbestos from 1961 through 1965 is not before us. That dispute will have to be resolved at trial when a properly instructed jury can assess the type and amount of Building Services's asbestos insulation sold to Jaeger or its predecessor in light of the totality of the circumstances. We cannot say on this summary-judgment Record, however, that any jury assessment would be mere speculation because, as we have explained in connection with the issue that *is* before us, a jury could reasonably infer that Benzinger was exposed to Building Services's asbestos from 1961 through 1965. *See Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978) ("Speculation and conjecture apply to a choice between liability and nonliability *when there is no reasonable basis in the evidence upon which a choice of liability can be made.*") (internal quotation marks and quoted source omitted; emphasis added). There is a "reasonable basis" in the Record for a jury to find that Building Services asbestos was a cause of Benzinger's cancer. Accordingly, we reverse and remand for trial.

*By the Court.*—Order reversed and cause remanded.